**Elmer BLACK, Plaintiff,**

v.

**Anthony M. FRANK, Postmaster General of the United States of America, Defendant.**

**Civ. A. No. 89–00017–BH.**

United States District Court, S.D. Alabama, S.D.

Jan. 24, 1990.

---

J. Cecil Gardner, Mobile, Ala., for plaintiff.

David G. Karro, Steven A. Hemmat, Dept. of Justice, Civ. Div., Washington, D.C., Eugene A. Seidel, Asst. U.S. Atty., Mobile, Ala., for defendant.

## ORDER

HAND, Senior District Judge.

### I.

### FINDINGS OF FACT

1. On November 26, 1986, Elmer G. Black, a letter sorting machine (LSM) distribution clerk at the Mobile, Alabama Post Office was terminated on charges that he

was physically unable to perform the duties of his position.

2. Black appealed his discharge to the Merit Systems Protection Board (hereinafter MSPB) whose Administrative Judge issued an April 16, 1987 initial decision which affirmed the action of the Postal Service (Attachment A of the Hopkins' Declaration). The Judge specifically found that Black could not perform his regular duties and that his limitations were such that a suitable, less rigorous position did not exist to which the Postal Service had an obligation to reassign Black.

3. Black appealed from the initial decision to the full Board of the MSPB which affirmed the initial decision by Order dated September 19, 1988 (Attachment B to the Hopkins' Declaration) 38 M.S.P.R. 272.

4. The genesis of Black's removal lay in wrist pains which he began to suffer in the spring of 1986. Black's personal orthopedist, William A. Crotwell, III, M.D., diagnosed Black as suffering from bilateral carpal tunnel syndrome which rendered Black capable of performing sedentary work of only four hours per day without using his right hand at all (Attachment 1 to the Phillips' Declaration). Black himself stated in a July 30, 1989 letter directed to the Office of Workers' Compensation (hereinafter OWCP) of the U.S. Department of Labor that his medical problems, evidenced by pain in both wrists, was caused and aggravated by keying on a letter sorter machine or by manually sorting ("sticking") the mail (Attachment 2 to the Phillips' Declaration). Black's personal physician confirmed in various later statements that Black's work caused and aggravated his condition (Attachments 3 and 4 to the Phillips' Declaration). The doctor accordingly reaffirmed the work limitations regarding Black which were outlined in Crotwell's first statement of July 10, 1986 (Attachments 5 and 6 to the Phillips' Declaration).

5. Black, believing that his medical problems were work-related, pursued a claim for compensation and benefits with OWCP. That office ultimately determined that his medical problems were indeed work-related and on June 3, 1989 awarded Black compensation for wage loss retroactive to May 27, 1986 and placed him on the periodic rolls of OWCP so that he would receive from that point forward 75% of his salary ($1,680.00) every four weeks (Attachments 7 and 8 to the Phillips' Declaration and Agreed Fact No. 4 at page 2 of the Pretrial Order).

6. Shortly afterwards, OWCP informed the Postal Service that it considered Black's medical status to be that of "temporary *total* disability" (Attachment 9 to the Phillips' Declaration) (emphasis supplied).

7. Comporting with this view, Black's personal physician reported to OWCP by letter dated December 12, 1988 that Black, who had not worked for the Postal Service for over two years and had thus been removed from any aggravating effect of his former employment for that entire time, *"should not be released to any sort of work activity due to the severity of his condition"* (Attachment 11 to the Phillips's Declaration) (emphasis supplied).

8. On the basis of this report, OWCP determined that Black "continue[s] to be totally disabled" (Attachment 13 to the Phillips' Declaration).

9. During 1989 Black had surgery on both wrists with substantial followup care and still reported as late as October 17, 1989 that he was suffering substantial postoperative pain (Attachment 14 to the Phillips' Declaration).

## II.

### CONCLUSIONS OF LAW

1. It is axiomatic that "federal courts are without power to decide questions that cannot affect the rights of litigants in the case before them" *North Carolina v. Rice,* 404 U.S. 244, 246, 92 S.Ct. 402, 404, 30 L.Ed.2d 413 (1971); *Bumpus v. Clark,* 702 F.2d 826, 287 (9th Cir.1983). Article III of the Constitution requires that a suit be dismissed as moot unless it in-

**1090**

volves "a real and substantial controversy admitting of specific relief." *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240–41, 57 S.Ct. 461, 463–64, 81 L.Ed. 617 (1937). A moot case is beyond the jurisdiction of the federal courts. *Rice*, 404 U.S. at 246, 92 S.Ct. at 404. Neither can it be argued that there is a case or controversy if Plaintiff's purported injuries cannot be redressed through a court action. *Valley Forge Christian College v. Americans United for Separation of Church and State*, 454 U.S. 464, 472, 102 S.Ct. 752, 758–59, 70 L.Ed.2d 700 (1983) and *Sample v. Johnson*, 771 F.2d 1335, 1338 (9th Cir. 1985). A case must be dismissed if the Court can award no remedy.

2. To award Plaintiff the remedy which he seeks in this case would irreconcilably conflict with the federal workers' compensation statutory scheme established by the Federal Employees Compensation Act (FECA), 5 U.S.C. § 8101 *et seq.* *Reep v. United States*, 557 F.2d 204, 207 (9th Cir. 1977).

3. As a former postal employee injured on the job, Complainant is expressly subject to and enjoys the benefits of FECA. 39 U.S.C. § 1005(c).[1] The federal workers' compensation program is a comprehensive scheme of statutory and regulatory enactments specifically intended to exclusively and preemptively remedy an employee for all work-related injuries. *See* 5 U.S.C. § 8101 *et seq.* and 20 C.F.R. § 1 *et seq.* FECA provides that the government shall pay a specified compensation for work-related injury.[2] FECA further provides that an employee may receive no other remuneration from the United States while he receives workers' compensation.[3]

4. Finally, FECA establishes that a decision under FECA that an injury is work-related and thus deserving of compensation benefits is final and not subject to judicial review.[4]

5. In this case, the judicially non-reviewable decision has been made under FECA that Plaintiff has a work-related injury which qualifies him for workers'

---

1. 39 U.S.C. § 1005(c) states:
   Officers and employees of the Postal Service shall be covered by subchapters I of Chapter 51 of Title 5, relating to compensation for work injuries.

2. Title 5 U.S.C. § 8102(a) states:
   The United States shall pay compensation as specified by this subchapter for the disability or death of an employee resulting from personal injury sustained while in the performance of his duty, unless the injury or death is—[Exceptions not applicable to this suit].

3. Title 5 U.S.C. § 8116(a) provides:
   (a) *While an employee is receiving compensation under this subchapter,* or if he has been paid a lump sum in commutation of installment payments until the expiration of the period during which the installment payments would have continued, *he may not receive salary, pay, or remuneration of any type from the United States,* except—
   (1) *in return for service actually performed.*
       \*    \*    \*    \*    \*    \*
   (Emphasis added.)

4. Title 5 U.S.C. § 8128 provides:
   (a) The Secretary of Labor may review an award for or against payment of compensation at any time on his own motion or on application. The Secretary, in accordance with the facts found on review, may—

(1) end, decrease, or increase the compensation previously awarded; or
(2) award compensation previously refused or discontinued.
   (b) The action of the Secretary or his designee in allowing or denying a payment under this subchapter is—
(1) final and conclusive for all purposes and with respect to all questions of law and fact; and
(2) not subject to review by another official of the United States or by a court by mandamus or otherwise.
   Credit shall be allowed in the accounts of a certifying or disbursing official for payments in accordance with that action.
The courts are uniform in holding that a decision of the Secretary of Labor (or his designee) respecting a FECA matter, including eligibility for benefits, is not reviewable by a federal court. *Wallace v. United States*, 669 F.2d 947, 953 (4th Cir.1982); *Gill v. United States*, 641 F.2d 195 (5th Cir.1981); and *Waters v. United States*, 458 F.2d 20 (8th Cir.1972). Since the Plaintiff sought compensation · benefits and since the Office of Workers' Compensation agreed that he was entitled to them, that decision is conclusive as to the fact that he has suffered a work-related injury; and those benefits constitute the totality of the government's obligation to the Plaintiff for his work-related disability for the whole period during which they are awarded.

compensation. Those benefits, accordingly, constitute the government's exclusive liability to him. Therefore, by operation of § 8116(a) of Title 5, Plaintiff can receive no additional compensation for the period during which he is paid OWCP benefits; and Plaintiff's claim for additional relief must fail.[5]

6. Judicial precedent and other authority supports this conclusion. In *Montgomery v. United States Postal Service*, CA No. 81–2647–G (W.D.Tenn. May 24, 1984),[6] the Court determined that OWCP payments constituted the totality of compensation to which a person who had alleged handicap discrimination and had sought "light duty" was entitled. The EEOC has itself successfully urged a similar position in a case in which that agency was the defendant. *Hill v. Thomas*, CA No. 82–1708 (D.D.C. November 3, 1983).[7] Furthermore, the EEOC as the government agency empowered to enforce Title VII has applied the same legal principles found in *Hill* to the EEOC's governance of the EEO administrative process.

■ 7. Alternatively, Defendant had no statutory duty under the Rehabilitation Act to afford Plaintiff light duty in any event.

8. In accordance with 5 U.S.C. § 7702(a)(1), Plaintiff asserted that he suffered discrimination in violation of the Rehabilitation Act of 1978, 29 U.S.C. § 791. The MSPB, in obedience to an administrative decision binding at the administrative level, *Ignacio v. United States Postal Service*, 30 M.S.P.R. 471, 486–87 (Special Panel 1986), understood that the Postal Service had a duty to reassign Plaintiff to a completely different position whose duties Plaintiff could perform if such a position were available. MSPB found, however,

that Plaintiff's work ability was so limited that no such position was available, a finding with which Plaintiff disagrees.

9. The courts, however, have found that "reassignment" is not required under the Rehabilitation Act and that an employee is properly fired if he cannot perform the essential functions of his given position, which the facts clearly establish is the case here. *Jasany v. United States Postal Service*, 33 FEP Cases, 1115, 1117 (N.D.Ohio 1983) ("The requirement of accommodation refers to adjustment within the job for which the handicapped employee was hired"), *aff'd*, 755 F.2d 1244, 1250 (6th Cir. 1985) ("The post office was not required to accommodate *Jasany* by eliminating one of the essential functions of his job"); *Wimbley v. Bolger*, 642 F.Supp. 481, 486 (W.D. Tenn.1986), *aff'd*, 831 F.2d 298 (6th Cir. 1987); *Carter v. Carlin*, 623 F.Supp. 1181, 1188 (D.Md.1985) ("... the duty to reasonably accommodate only contemplates accommodation of a qualified handicapped employee's present position"); and *Alderson v. Postmaster General*, 598 F.Supp. 49, 55 (W.D.Okla.1984) ("The regulation clearly refers to making the particular job, not another job for which the handicapped person was not hired, accessible to handicapped persons").

10. Accordingly, Plaintiff's assertion that the failure to give him light duty was a failure to reasonably accommodate in violation of the statute is not supported.

■ 11. Finally, the fact of Plaintiff's total disability as found by OWCP independently moots his claim.

12. Plaintiff's own physician initially placed highly restrictive limitations upon his patient: sedentary work for four hours per day without any use of the right hand.

---

**5.** Even if FECA law were not so clear, equity would dictate the same result since Plaintiff, while on compensation, did not incur the usual costs associated with working (e.g., clothing, transportation, travel time, etc.) and since his OWCP benefits (at a rate of 75%) are statutorily tax free. *See* 26 U.S.C. § 104(a). Moreover, OWCP compensation is not a "collateral" source of income from which the Postal Service should

not benefit since the Postal Service directly reimburses OWCP for its payments to injured Postal Service employees. *See* 5 U.S.C. § 8147.

**6.** This decision is unpublished and is attached hereto as Appendix A.

**7.** This decision is unpublished and is attached hereto as Appendix B.

In essence, the doctor allowed at most that half a man could work half a day.

13. The same physician determined in late 1988 that Plaintiff's condition was so severe as to prevent any nature of work, even though Plaintiff had not performed for over two years those duties found to have caused and aggravated his condition.

14. More important, however, is the determination of OWCP that through the entire period since Plaintiff's termination he has been totally disabled, which finding was the necessary predicate for his receipt of workers' compensation benefits.

■ 15. It is established and obvious that backpay is available only for those periods when the employee is ready, willing, and able to return to work. *Miller v. Marsh*, 766 F.2d 490, 491–92 (11th Cir.1985) and *Ostopowicz v. Johnson Bronze Co.*, 541 F.2d 394, 401 (3d Cir.1976), *cert. denied*, 429 U.S. 1041, 97 S.Ct. 741, 50 L.Ed.2d 753 (1977). Plaintiff is, of course, on OWCP rolls because he claimed a work-related injury and because OWCP found in a non-reviewable decision that he is totally disabled. Consequently, he is unable return to work (mooting his reinstatement claim) and is not entitled to backpay in any amount because of his continued unavailability for work.[8]

16. Since Plaintiff has no entitlement to relief of any sort due to his inability to work, his entire cause is properly dismissed. *Bennett v. Carroon & Black Corp.*, 845 F.2d 104, 107 (5th Cir.1988).

### III.

### ORDER

Pursuant to the above-stated findings of fact and conclusions of law, it is hereby ORDERED that summary judgment be granted to Defendant and that the Clerk enter final judgment on behalf of Defendant.

---

8. Should Plaintiff ever partially or fully recover as determined by OWCP, 5 U.S.C. § 8151(b)(2) mandates the Postal Service to "make all reason-

### APPENDIX A

Robert W. Montgomery, Plaintiff,

vs.

United States Postal Service, et al., Defendants.

No. 81–2647–G

In the United States District Court for the Western District of Tennessee Western Division

ORDER INCORPORATING ORAL FINDINGS OF FACT AND CONCLUSIONS OF LAW

The court has made the following decisions with respect to this handicap discrimination action brought under 42 U.S.C. Section 2000e–16(c):

1. Defendant's refusal to reinstate plaintiff to his job constituted illegal discrimination based on defendant's treatment of plaintiff as handicapped.

2. Plaintiff is entitled to be reinstated to his prior employment with the Postal Service. Defendant shall initially assign plaintiff to light duty, for a period of not more than three months, if plaintiff so requests.

3. Plaintiff is not entitled to back pay in connection with this claim.

4. The court reserves a ruling on plaintiff's application for award of attorney's fees. Plaintiff's counsel is to submit an affidavit in connection with the application by May 25, 1984. Defendant is to file a response to plaintiff's application and any request for hearing within 10 days of the filing of the affidavit.

Complete findings of fact and conclusions of law are contained in the court's oral ruling of May 15, 1984, which is incorporated by reference into this order. Judgment shall not be entered in this case until

---

able efforts, and accord priority in placing [him] in his former or equivalent position...."

the court has ruled on plaintiff's application for attorney's fees.

IT IS SO ORDERED.

/s/ Julia Smith Gibbons
Julia Smith Gibbons
United States District Judge
May 23, 1984
DATE

## ORAL FINDINGS OF FACT AND CONCLUSIONS OF LAW

Turning to the back pay issue, which in this case presents several thorny problems, the Court concluded that the plaintiff was not entitled to back pay in connection with his claim. The defendant has contended that the plaintiff cannot recover back pay during the period of time that he was receiving compensation benefits; that is, from September, 1980, to March 25, 1982. This argument is based on two separate contentions.

First, the defendant contends that recovery of any back pay is premised on ability to work. Award of compensation benefits requires a finding of disability, and thus negates ability to work. Therefore, defendant contends the plaintiff in this case should not be entitled to receive back pay.

Defendant's second contention with regard to back pay is that when an employee is qualified for compensation benefits, he can not receive any additional federal salary under the statute, and this includes back pay.

The first argument alone, if you took it alone, could perhaps be countered by the plaintiff's argument that his positions are not inconsistent; that his position is that he was available for light duty work; however, taking both the arguments together and considering both of them, the Court believes that the plaintiff is not entitled to back pay during the time he received compensation benefits. In this context the Hill decision which was submitted by the defendant subsequent to the trial has been persuasive to the Court, although the Court reached that conclusion independently as well, but the Hill decision was helpful in reaching this determination.

Nor can the plaintiff receive back pay for the period subsequent to the termination of compensation benefits. Once the plaintiff's compensation benefits ceased, the plaintiff had a right to priority consideration for restoration to duty under 5 CFR, Section 353, provided he applied within thirty days of the cessation of his compensation benefits. The plaintiff in this case, however, did not make such application. Thus, he cannot be entitled to back pay subsequent to the termination of benefits. In this particular case the plaintiff cannot argue that the 1980 refusal to reinstate plaintiff would have precluded a 1982 reinstatement. This is true because in the period of time since 1980 a DC Circuit had decided the Raicovich case, and the standards had changed during that time to the extent that Adair's stated bases for the refusal to reinstate in 1980 clearly could not have provided a basis for refusal in 1982; that is, his bases that related to prior job performance.

## CERTIFICATE

I, Joe N. Moore, Official Court Reporter, certify that the foregoing is a correct transcript from the record of proceedings in the above entitled matter.

/s/ Joe N. Moore
Joe N. Moore

Date: 5–31–84

## APPENDIX B

Edward G. Hill, Plaintiff,

v.

Clarence Thomas, Chairman, Equal Employment Opportunity Commission, Defendant.

Civil Action No. 82–1708

United States District Court for the District of Columbia

Filed Nov. 3, 1983

## MEMORANDUM OPINION AND ORDER

This case comes before the Court on a motion by the defendant to dismiss or, in

the alternative, for summary judgment. Upon consideration of the motion, the opposition thereto, the supplemental reply memoranda submitted by both parties, and the oral arguments of counsel, the Court finds that no genuine issues of material fact remain in this case and that summary judgment shall be granted.

Plaintiff Edward Hill, a GS–13 employee with the Equal Employment Opportunity Commission ("EEOC") since 1972, suffers from severe allergies. In 1978, the EEOC Columbia Plaza office building in which Mr. Hill worked developed certain environmental deficiencies including excessive water and exhaust fume seepage. Persistent dampness fostered the growth of mold and bacteria which spread into the building's ventilation system. Beginning in December 1979, Mr. Hill experienced allergic reactions such as bronchitis, migraine headaches and nausea, all of which were caused and exacerbated by the aforementioned adverse working conditions. Upon the advice of his physicians, Mr. Hill repeatedly sought a transfer from the Columbia Plaza offices to a mold-free EEOC branch. In May 1980, five months after his first request, Mr. Hill was transferred to the EEOC headquarters in Bailey's Crossroads, Virginia. However, Mr. Hill continued to be sensitive to any dampness, dust or mold in the workplace, and was forced to take sick leave on numerous occasions. He thereby incurred a negative balance in his allotted leave time which prevented him from receiving further paid sick leave.

Although Mr. Hill consulted informally with EEOC counselor Franklin Chow as early as February 1980, his first agency complaint was filed in November 1981, or some sixteen months after his transfer. The complaint alleged discrimination on the basis of a physical handicap, and requested reimbursement of medical expenses as well as reinstatement of all sick leave time. A second similar complaint was filed by Mr. Hill in January 1982.

Plaintiff instituted the present action in June 1982 after denial by the EEOC of his administrative claims. The complaint repeated those allegations and prayers for relief made before the EEOC; and additionally requested, in effect, a declaratory judgment that should plaintiff be reassigned to the Columbia Plaza building, he would be transferred instead to an EEOC branch office in a "dry, mold-free environment such as Arizona or New Mexico...." (Complaint p. 23, ¶ 1.) Although filed *pro se*, Mr. Hill's twenty-four (24) page complaint sets forth articulately and in considerable detail those facts and circumstances underlying his cause of action and requests for relief. Since that time, plaintiff has retained counsel who has expressed Mr. Hill's unconditional desire for transfer by the EEOC to the southwestern United States.

Defendant seeks summary judgment or dismissal on three grounds. With respect to plaintiff's allegations of discrimination by the denial of transfer from January until May 1980, defendant argues correctly that this claim, first asserted some sixteen (16) months after the fact, must be dismissed for failure to seek timely administrative remedies. 29 C.F.R. § 1613.214(a)(1)(i) requires that claims be made to the appropriate EEOC counselor within thirty (30) days following an allegedly discriminatory event.

Plaintiff seeks to avoid this barring limitation on two theories. First, plaintiff argues for equitable tolling of the limitations period by dint of misinformation provided to Mr. Hill by EEOC counselor Franklin Chow. The Chow affidavit confirms Mr. Hill's allegation that he was erroneously albeit innocently led to believe that his allergic affliction did not qualify as a "handicap," and that his best avenue for relief lay within official channels.

*Saltz v. Lehman*, 672 F.2d 207 (D.C.Cir. 1982), holds that equitable tolling in a discrimination case may be justified under appropriate circumstances, but that the burden of proof lies with the party seeking such equitable relief. *Id.* at 209. While Mr. Chow's advice may have justified some delay in filing an EEOC complaint, it seems unreasonable on these facts alone to toll time limitations for more than sixteen

months. Plaintiff experienced daily the discomforting effects of the complained-of discrimination. Moreover, he worked for the very agency empowered to enforce those laws he now sues upon. By exercising due diligence, plaintiff surely could have sought further counsel from his fellow employees in search of a more expeditious remedy. In the context of discrimination actions, the application of a limitations period "inevitably reflects a value judgment concerning the point at which the interests in favor of protecting valid claims are outweighed by the interests in prohibiting the prosecution of stale ones." *Delaware State College v. Ricks,* 449 U.S. 250, 260, 101 S.Ct. 498, 505, 66 L.Ed.2d 431 (1980), *citing Johnson v. Railway Express Agency, Inc.,* 421 U.S. 454, 463–64, 95 S.Ct. 1716, 1721–22, 44 L.Ed.2d 295 (1975). Neither the facts nor the equities will support tolling in this case.

Plaintiff contends further that the repeated rejection of his sick leave requests constitutes a continuing violation, thereby reviving the allegedly discriminatory denial of transfer prior to May 1980. The critical question for a continuing violation is whether a related discriminatory act, timely complained of, occurred within the applicable limitations period. *See, e.g., Shehadeh v. Chesapeake and Potomac Telephone Company,* 595 F.2d 711, 724 (D.C. Cir.1978); *Laffey v. Northwest Airlines, Inc.,* 567 F.2d 429, 473 (D.C.Cir.1976), *cert. denied,* 434 U.S. 1086, 98 S.Ct. 1281, 55 L.Ed.2d 792 (1978). In this case, plaintiff has alleged present discrimination by the refusal of the EEOC to recredit his past sick leave. While this negative balance may have originated in the allegedly discriminatory denial of transfer, plaintiff has submitted no evidence tending to impute a discriminatory animus to defendant's present acts. Absent any proof of a related present discrimination, past discriminatory acts not timely complained of are merely events in history having no present legal effect. *United Air Lines, Inc. v. Evans,* 431 U.S. 553, 558, 97 S.Ct. 1885, 1889, 52 L.Ed.2d 571 (1977); *Milton v. Weinberger,* 645 F.2d 1070, 1075 (D.C.Cir. 1981).

With respect to those claims timely referred to the EEOC, defendant considers them moot by plaintiff's receipt of compensation under the Federal Employee's Compensation Act ("FECA"). 5 U.S.C. § 8101 *et seq.* Plaintiff contends that he is entitled under the Rehabilitation Act, 29 U.S.C. § 701, *et seq.,* to "make-whole" relief supplementing the incomplete recovery granted him under FECA.

Congress enacted FECA to provide federal employees with a speedy and certain remedy for disabling injuries incurred in the performance of duty. 5 U.S.C. § 8102(a). Yet, Congress sought also to limit the liability of the federal government, and so designed FECA as the exclusive mechanism for employee compensation actions. 5 U.S.C. § 8116(c). *Anthony v. Norfleet,* 330 F.Supp. 1211 (D.D.C.1971); *Mason v. District of Columbia,* 395 A.2d 399 (D.C.App.1978).

Plaintiff elected to file with the Department of Labor a request for FECA compensation, and received compensation thereunder, including restoration of seventy-five percent (75%) of the denied leave time. The FECA award also permitted Mr. Hill to "buy-back" the remaining leave and thus restore his sick leave balance. Moreover, the EEOC has returned to Mr. Hill some fifty-one (51) hours of "advance sick leave." (Ex. A, Defendant's Reply to Plaintiff's Opposition.) Plaintiff is essentially asking the Court to order the EEOC to effectively buy back that remaining percentage of lost sick leave time for Mr. Hill. The relief sought therefore lies in the nature of financial compensation rather than accommodation of plaintiff's handicap. Where a plaintiff accepts FECA compensation, this Court may not provide a further monetary award in excess of that exclusive recovery, even though it may fail to compensate the full extent of plaintiff's injury. *Tredway v. District of Columbia,* 403 A.2d 732 (D.C.App.), *cert. denied,* 444 U.S. 867, 100 S.Ct. 141, 62 L.Ed.2d 92 (1979).

The final matter addressed by the defendant is plaintiff's recent request for uncon-

ditional transfer to an EEOC branch office in the southwest United States. Mr. Hill has never requested such relief in an agency complaint before the EEOC. This claim must therefore be dismissed for failure to exhaust administrative remedies. *Brown v. General Services Administration,* 425 U.S. 820, 831, 96 S.Ct. 1961, 1967, 48 L.Ed.2d 402 (1976); *Siegel v. Kreps,* 654 F.2d 773 (D.C.Cir.1981).

Wherefore, it is this 3rd day of November, 1983,

ORDERED that defendant's motion for summary judgment and is hereby GRANTED.

/s/ Thomas F. Hogan
Thomas F. Hogan
United States District Judge