**William A. BYERS, Plaintiff,**

v.

**ROCKFORD MASS TRANSIT DISTRICT, Defendant.**

No. 85 C 20289.

United States District Court, N.D. Illinois, W.D.

May 28, 1986.

H. Jim Bagley, Reese, Reese & Bagley, Rockford, Ill., for plaintiff.

Richard D. Gaines, Holmstrom & Green, Rockford, Ill., for defendant.

ROSZKOWSKI, District Judge.

## ORDER

Before the court is defendant's motion to dismiss. Jurisdiction is predicated on 29 U.S.C. § 794 and 28 U.S.C. § 1331. For the reasons stated herein, defendant's motion to dismiss is denied. That portion of plaintiff's complaint which seeks damages in excess of $250,000 is striken.

## I. BACKGROUND

The facts underlying the present case as alleged in the complaint are as follows:

Plaintiff William Byers was hired by defendant Rockford Mass Transit District ("RMTD") as a bus driver in May of 1972. Sometime after he was hired, plaintiff underwent a laryngectomy. Because of this operation plaintiff must use a mechanical voice amplifier to speak.

Following his operation, plaintiff resumed work on a regular basis. While he was required to occasionally miss work, his absences were by direction of "competent medical authorities". Plaintiff informed RMTD on each occasion of these medical directives and provided RMTD with documentation whenever possible.

On March 12, 1984, plaintiff was fired allegedly for excessive absenteeism.[1] Plaintiff believes that he was in fact fired due to his handicap.

Over eighteen months after his dismissal, on September 20, 1985, plaintiff filed this action. Plaintiff contends that by firing him based on his handicap, RMTD violated the Rehabilitation Act of 1973, 29 U.S.C. §§ 701 *et seq.* Specifically, Count I of plaintiff's complaint alleges that RMTD violated Section 504 of the Act. That section provides:

No otherwise qualified handicapped individual in the United States ... shall, solely by reason of his handicap, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance....

29 U.S.C. § 794. Count II seeks an award of attorney's fees pursuant to Section 505(b) of the Act, 29 U.S.C. § 794a(b).

RMTD filed the instant motion to dismiss based on plaintiff's failure to (1) exhaust his available administrative remedies and (2) allege that the discrimination occurred in an RMTD program or activity receiving federal financial assistance. RMTD also contends that plaintiff's improper claim of money damages should be striken. Each of these points will be discussed in turn.

## II. DISCUSSION

### A. ADMINISTRATIVE EXHAUSTION UNDER SECTION 504

RMTD first argues that private individuals such as plaintiff must exhaust their

---

**1.** To this end, RMTD states in its memorandum in support of the instant motion that during the five and one-half years that plaintiff was employed following his operation, he missed 902 days, or approximately 69 percent of his scheduled work time. These "facts" are not part of the complaint, go only to the merits of the plaintiff's claim, and are not relevant for purposes of the instant motion to dismiss.

administrative remedies prior to bringing suit under Section 504. In support of its position, RMTD points to the Seventh Circuit case *Lloyd v. Regional Transportation Authority*, 548 F.2d 1277 (7th Cir. 1977), and the subsequent enactment of Section 504's administrative enforcement mechanism.

In *Lloyd*, the Seventh Circuit established an individual private right of action under Section 504. At the time *Lloyd* was decided, there was no administrative remedy in place for enforcement of Section 504. While the Seventh Circuit specifically left open the question of whether administrative exhaustion would be required once administrative remedies were established, it did not indicate that prior exhaustion would be the rule:

> [A]ssuming a meaningful administrative enforcement mechanism, the private cause of action under Section 504 should be limited to *a posteriori* judicial review.

*Lloyd*, 548 F.2d. at 1286 n. 29.

In 1978, on the heels of the *Lloyd* decision, Congress amended the Rehabilitation Act to expressly provide a private cause of action. Under new Section 505(a)(1), federal handicapped employees were given the "remedies, procedures, and rights" of Title VII of the Civil Rights Act of 1964. *See* 29 U.S.C. § 794a(a)(1). Handicapped individuals such as plaintiff who are aggrieved by an act of a recipient of federal financial assistance were given the "remedies, procedures, and rights" of Title VI of the Civil Rights Act. *See Id.*, § 794a(a)(2).

█ Under this enforcement scheme, federal employees claiming Rehabilitation Act violations are required, like other Title VII claimants, to exhaust their administrative remedies prior to bringing suit. *See, e.g., Smith v. United States Postal Service*, 766 F.2d 205, 206 (6th Cir.1985); *McGuinness v. United States Postal Service*, 744 F.2d 1318, 1320 (7th Cir.1984). Administrative exhaustion has *not* been mandated however for private claimants bringing suit under Section 504. Those appellate courts that have addressed the issue have found that the available admin-

istrative enforcement scheme provides inadequate relief for private Section 504 claimants. *See, e.g., Boyd v. United States Postal Service*, 752 F.2d 410, 413 (9th Cir. 1985) (citing *Kling v. County of Los Angeles*, 633 F.2d 876, 879 (9th Cir.1980)); *McGuinness*, 744 F.2d at 1321 (dicta); *Greater Los Angeles Council on Deafness, Inc. v. Community Television of Southern California*, 719 F.2d 1017, 1021 (9th Cir.1983); *Camenisch v. University of Texas*, 616 F.2d 127, 134–35 (5th Cir.1980).

The touchstone for the Section 504 "no exhaustion" rule is the Supreme Court decision in *Cannon v. University of Chicago*, 441 U.S. 677, 99 S.Ct. 1946, 60 L.Ed.2d 560 (1979). In *Cannon*, the Supreme Court established a private cause of action under Title IX that did not require individuals to exhaust available administrative procedures. Administrative exhaustion was not required because (1) the complaint procedures did not allow the complainant to participate in the administrative investigation or subsequent enforcement proceedings and (2) the ultimate remedy available through administrative channels—a complete cut-off of federal funds to the institution—would not provide relief for an injured claimant. 99 S.Ct. at 1962–63. *See Camenisch*, 616 F.2d at 135.

The Fifth Circuit explained the *Cannon* decision in *Camenisch*.

> It is clear why the Supreme Court reached the result it did in *Cannon*. The administrative enforcement process, established by Congress as a part of Title VI, centers entirely on the question of whether, in light of the policies and practices of a recipient of federal assistance, federal funds should continue to flow to that recipient. It is predicated upon the need by the Secretary to monitor and enforce the non-discrimination provisions of agreements between [the government agency] and the recipient of federal assistance.... The purpose of the administrative framework is to provide a forum in which to initiate fund termination proceedings in the event a grant recipient fails to meet its obligations. It is not

intended to provide a forum for program beneficiaries to press claims for discrimination against recipients....

616 F.2d at 135 (citations omitted). *See also McGuinness*, 744 F.2d at 1321 (dicta).

■ The inappropriateness of Title VI administrative enforcement procedures for private claimants thus underlies *Cannon*. Section 504 administrative regulations, like those of Title IX, were modeled after Title VI and are designed primarily to force compliance with the Rehabilitation Act through threatened cut-off of federal assistance. It is this correlation of administrative schemes that has lead the courts to hold that exhaustion is not a prerequisite to private enforcement of Section 504. *Kling*, 633 F.2d at 879; *Camenisch*, 616 F.2d at 135. *See also Sanders v. Marquette Public Schools*, 561 F.Supp. 1361, 1369 (W.D. Mich.1983).[2]

Like other Section 504 cases, the administrative procedures applicable to the present case mirror those involved in *Cannon*. Resort to these administrative channels is therefore inadequate and not required. *Compare* 49 C.F.R. § 27.123(b) *with* 45 C.F.R. § 80.8.

## B. SECTION 504 PROGRAM SPECIFICITY

RMTD next points to the fact that Section 504 prohibits discrimination only by a "program or activity receiving federal financial assistance." 29 U.S.C. § 794. RMTD argues that this language limits the ban on discrimination to the specific program that receives the federal funds. Since plaintiff has failed to allege some "nexus" between RMTD's federal funding and his specific job area, his complaint is inadequate under Section 504.

In *Consolidated Rail Corp. v. Darrone*, 465 U.S. 624, 104 S.Ct. 1248, 79 L.Ed.2d 568 (1984), the Supreme Court recently held that the Section 504 ban on discrimination is limited to only the specific programs or activities receiving federal assistance. As RMTD correctly notes however, the *Darrone* Court did not provide any guidance on the extent of the nexus required between the program receiving the assistance and the plaintiff's job. The Court chose instead to remand the case to the district court for further factual findings. *Darrone*, 104 S.Ct. at 1256.

■ One precept that can be drawn from *Darrone* is that the issue of program specificity must be decided case by case based on the underlying facts surrounding the federal funding. *See* 104 S.Ct. at 1255. Stated another way, "the issue of program specificity cannot be properly analyzed in the abstract, but instead requires a concrete set of facts." *United States v. University Hospital*, 729 F.2d 144, 151 (2d Cir.1984). As long as some federal funding is alleged then, the program specificity issue is more properly the subject of a summary judgment motion. *See Tudyman v. United Airlines*, 608 F.Supp. 739, 742 (C.D.Cal.1984) (quoting *University Hospital* and *Darrone*).

■ Plaintiff in this case has alleged that RMTD "is a recipient of Federal financial assistance." Complaint, ¶ 2. Despite its numerous legal arguments regarding the program-specific nature of Section 504, RMTD does not deny that it receives federal assistance.[3] Drawing all reasonable inferences in favor of plaintiff, as this court must for purposes of the instant motion, it is at least arguable at this point in this case that RMTD's federal assistance has sufficient nexus to plaintiff's area of employment to satisfy Section 504.

## C. DAMAGES UNDER SECTION 504

In his prayer for relief, plaintiff requests reinstatement, backpay, lost retirement

---

**2.** One court has gone so far as to hold that private court proceedings can be initiated during the pendency of previously initiated administrative proceedings. *Greater Los Angeles Council on Deafness*, 719 F.2d at 1021 ("untidy, and wasteful use of judicial resources" does not mandate dismissal of private action).

**3.** Proof of such an outright denial would of course destroy a Section 504 claim. At the pleading state, however, plaintiffs will seldom if ever know the intricacies of their employer's use of federal assistance.

benefits, attorney's fees, and money damages "in excess of Two Hundred and Fifty Thousand ($250,000.00) Dollars...." RMTD argues that plaintiff's request for money damages is improper under Section 504.

Neither the Seventh Circuit nor the Supreme Court have defined the exact relief available under Section 504. From *Darrone*, it is clear that Section 504 plaintiffs alleging intentional discrimination may bring an action for backpay. 104 S.Ct. at 1252-53. From Section 505(b), 29 U.S.C. § 794a(b), it is clear that attorney's fees are recoverable in Section 504 actions.

Given the similarity between private actions under Section 504 and actions under Title VII and other workplace discrimination cases, this court feels that the relief available to Section 504 plaintiff should parallel that of Title VII plaintiffs. *See Guardians Ass'n v. Civil Service Comm'n*, 463 U.S. 582, 103 S.Ct. 3221, 3249, 77 L.Ed.2d 866 (1983) (Marshall, J., dissenting). As the Seventh Circuit recently stated, "Title VII authorizes any equitable remedies the court deems appropriate, including backpay, but not compensatory or punitive damages." *Patzer v. Board of Regents of the University of Wisconsin System*, 763 F.2d 851, 854 n. 2 (7th Cir.1985) (citations omitted).

Plaintiff's request for general money damages in excess of $250,000 is therefore striken as an improper attempt to receive compensatory or punitive damages in this action.

## III. CONCLUSION

For the reasons stated herein, RMTD's motion to dismiss is denied. Plaintiff's request for money damages in excess of $250,000 is striken.