Mary TUCK, Plaintiff–Appellee,

v.

HCA HEALTH SERVICES OF TENNESSEE, INC., d/b/a Donelson Hospital, Defendant–Appellant.

No. 92–5954.

United States Court of Appeals, Sixth Circuit.

Argued Aug. 3, 1993.

Decided Oct. 5, 1993.

Rehearing and Suggestion for Rehearing En Banc Denied Nov. 19, 1993.

Frank Steiner (argued and briefed) and Ann Buntin Steiner (briefed), Steiner & Steiner, Nashville, TN, for plaintiff-appellee.

Robert E. Boston (briefed), Stephen W. Grace (briefed), Waller, Lansden, Dortch & Davis, and Mark E. Edwards (argued), Nashville, TN, for defendant-appellant.

Before: KEITH and KENNEDY, Circuit Judges; and CONTIE, Senior Circuit Judge.

KEITH, Circuit Judge.

Defendant-appellant, HCA Health Services of Tennessee, Inc. (hereafter, "defendant Hospital"), appeals the district court's denial of its motion for a judgment as a matter of law in a jury trial on its state claim under the Tennessee Human Rights Act and in a bench trial under the Rehabilitation Act of 1973, 29 U.S.C. § 794.

## I.

On March 27, 1991, plaintiff-appellee Tuck sued defendant Hospital, claiming defendant illegally discharged her because of her back disability. She claimed violations of 42 U.S.C. § 1983,[1] section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, and the Tennessee Human Rights Act, Tenn.Code Ann. §§ 8–50–103 and 4–21–101 et seq.[2]

On January 18, 1992, defendant Hospital filed a motion for summary judgment which the court took under advisement. The Tennessee Human Rights Act claim was tried before a jury on February 4–7, 1992. When Tuck closed her case in chief, the district court denied the Hospital's motion for judgment as a matter of law as to all of Tuck's remaining claims. On February 7, 1992, the jury found for plaintiff Tuck, and against defendant Hospital, on plaintiff's state claim. The entry of judgment was deferred until June 3, 1992 when the district court entered a memorandum opinion in favor of plaintiff Tuck in regard to her section 504, Rehabilitation Act claim tried before the bench without a jury.

The jury awarded Tuck $26,755.00 on her state claim. The district court further ordered defendant Hospital to reinstate Tuck, to pay her reasonable attorney fees and costs, and ordered the entry of the jury's award of damages.

On June 18, 1992, the district court denied defendant's motion for judgment as a matter of law. On July 16, 1992, the Hospital filed a timely notice of appeal.

In 1979, plaintiff Tuck began working for defendant Hospital as a registered nurse. She worked as both a staff nurse and a charge nurse for various wards at the hospital. As a charge nurse for the orthopedic ward, she took reports concerning patients, made rounds with doctors, and assigned tasks and supervised the other nurses on the ward.

Defendant Hospital made yearly evaluations of its employees. From 1979 to 1988, Tuck's supervisors ranked her work from "good" to "very good" to "outstanding." For September 1985, she was employee of the month.

On February 16, 1989, Tuck injured her back at work, having done so previously. Both times, she was assisting in lifting a patient who had fallen out of bed. Following the February 16, 1989 injury, she went to her doctor who referred her to Dr. Don Gaines. Dr. Gaines allowed her to return to work under light duty restrictions. She returned to her position as charge nurse on the orthopedic ward, mostly a managerial and supervisory position.

On March 14, 1989, having determined that surgery was required, Dr. Gaines performed extensive surgery on Tuck's back.[3] Following surgery, Tuck had to wear a back brace at all times, except to bathe. Starting December 5, 1989, she had to wear the brace only when on a car trip or involved in an activity that jeopardized her back.

1. Plaintiff later withdrew the 42 U.S.C. § 1983 claim.

2. Plaintiff also amended her complaint, adding a claim of retaliatory discharge for a filing claiming worker's compensation. On defendant's Fed. R.Civ.P. 50 motion, the district court dismissed

this claim; plaintiff Tuck has not cross-appealed this decision.

3. The doctor performed a laminectomy, a partial facetectomy, a foraminotomy, removed her fourth lumbar disc, and completed a bone fusion.

Dr. Gaines determined that plaintiff Tuck suffered a 15% permanent impairment to her body as a whole because of her back. For purposes of her permanent partial disability claim, Tuck agreed that she suffered a 37½ permanent partial disability to her body as a whole.

On January 18, 1990, Dr. Gaines told Tuck that she could return to work, restricted to light duty for a few months according to plaintiff Tuck; for two months, according to defendant Hospital.[4] Dr. Gaines added no other restrictions to the release.

Although Dr. Gaines had allowed her to return to work as of January 18th, she did not begin to work again for defendant Hospital until February 5, 1990. She had given the hospital Dr. Gaines' release, and stated she could do no extensive labor (pushing, bending, heavy lifting, or pulling). The hospital assigned her as a staff nurse in the Progressive Care Unit (PCU) working a twelve hour shift, because her position as a charge nurse on an eight hour shift had been filled in orthopedics.[5] The Chief Nursing Executive, Ms. Cathy Parrish, and the clinical coordinator, Ms. Ruth Harkreader, determined that PCU would be the best position for Tuck. The PCU ward had shorter hallways, the nurse's station was centralized, and the ward had only fourteen beds with at least three nurses working the ward. Ms. Parrish thought the other nurses in PCU would be most accepting of helping plaintiff Tuck. In return, Tuck was to help do less strenuous tasks for the other nurses on PCU. The shift was a 12 hour one, however, compared to the eight hour one on orthopedics.

When Tuck sought to return to work, the Hospital had several positions advertised as available, including some having eight-hour shifts. However, Ms. Cathy Parrish testified that these positions were not open, and that it was common practice for the hospital to run advertisements regardless of whether the positions were open.

On March 23, 1990, plaintiff Tuck, Nurse Nell Sergeant, and a third nurse were to work on the 7:00 p.m. to 7:00 a.m. shift. The third nurse called in sick, leaving Tuck and Nurse Sergeant to care for fourteen patients. The shift coordinator, Ms. Charlene Reagan, was unable to call in help. Ms. Reagan assisted as well as she could, given her hospital-wide responsibilities. Apparently, plaintiff Tuck called her supervisors during this shift to complain about the working condition and her limited ability to work because of her back. However, Tuck completed her work receiving no complaints from her supervisors.

While working on PCU, plaintiff Tuck never received any complaints from co-workers or her supervisors about either her work performance or her part of the arrangement to receive help from the other nurses on the ward. No written counseling forms appear in her personnel file, nor do any complaints from co-workers appear in it. The Hospital contends that the other nurses on the ward complained that Tuck was not fulfilling her part of the bargain by helping them with their light tasks, in exchange for their helping her with her lifting.

Throughout this time, Tuck endured pain in her right hip, radiating into her right leg and foot, and numbness in her left foot. She could not lift patients, push patients in a stretcher, bend over patients, nor help patients into or out of a bathtub. This prompted Ms. Parrish to accept the clinical coordinator's recommendation to terminate Appellee Tuck's position within PCU even though she had not completed eight weeks in the restricted duty program as recommended by her doctor. Having found no other positions available for which Tuck was qualified, Ms. Parrish terminated plaintiff on March 27, 1990 following Tuck's completion of her 12 hour evening shift on the PCU ward. According to the termination interview form, plaintiff Tuck was "unable to perform expect-

4. Defendant Hospital had a restricted duty program that held in part: "The employee will work in the Restricted Duty program until such time as the physician releases him to unrestricted duty."

5. During appellee's leave of absence, defendant Hospital changed its treatment approach. Nurses would be assigned a certain number of patients, being responsible for the entire case of those patients. No longer did each ward have a charge nurse supervising other nurses, sitting at a desk and answering the telephone.

ed staff nurse duties on progressive care due to her inability to do any lifting or pushing or to walk the length of the hall 'due to pain in her leg.' ".

Within four months of being terminated, plaintiff Tuck secured a job with Cloverbottom Developmental Center in a supervisory capacity, a position that allegedly requires as much or more manual labor than required on the PCU ward. She has performed these tasks "competently and adequately."

## II.

■ Defendant Hospital first contends that the district court erred by submitting Tuck's state claim to the jury because she did not establish a *prima facie* case under the Tennessee Human Rights Act. Defendant Hospital questioned the propriety of the district court's sending the state claim to the jury and filed a motion for judgment as a matter of law. An appellate court's standard of review of a motion for judgment as a matter of law is the same as the standard the district court uses. *Hunt v. Coynes Cylinder Co.*, 956 F.2d 1319, 1328 (6th Cir.1992), citing *King v. Love*, 766 F.2d 962, 967 (6th Cir.), *cert. denied*, 474 U.S. 971, 106 S.Ct. 351, 88 L.Ed.2d 320 (1985). A district court considers the evidence in a light most favorable to the party against whom the motion is made, giving that party the benefit of all reasonable inferences. *Id.*, citing *Lewis v. Irvine*, 899 F.2d 451, 454–55 (6th Cir.1990). A motion for a judgment as a matter of law should be granted whenever there is a complete absence of pleading or proof on an issue material to the cause of action or when no disputed issues of fact exist such that reasonable minds would not differ. *Id.*, citing *Kitchen v. Chippewa Valley Schools*, 825 F.2d 1004, 1015 (6th Cir.1987).

Defendant Hospital contends that Appellee Tuck failed to establish a *prima facie* case under Tenn.Code Ann. § 8–50–103. The code reads in part:

[t]here shall be no discrimination in the ... firing ... by any private employer against any applicant for employment based solely upon any physical handicap of the applicant, unless such handicap to some degree prevents the applicant from performing the duties required by the employment sought or impairs the performance of the work involved.

Tenn.Code Ann. § 8–50–103(a) (Supp.1992) (emphasis added).

■ In order to establish a *prima facie* case of handicap discrimination under T.C.A. § 8–50–103, a plaintiff is thus required to show (1) that she has a handicap, and (2) that she can actually do the work or is "otherwise qualified" to do the work notwithstanding her handicap. Once the plaintiff has established her *prima facie* case, the burden then shifts to the defendant employer to show that its job requirements and standards are bona fide occupational requirements. *Abraham v. Cumberland–Swan, Inc.*, slip op., No. 90CV–1064 at 13–14, 1992 WL 207775 (Tenn.Ct. App. Aug. 28, 1992).

As mandated by the plain language of T.C.A. § 8–50–103, discrimination based on handicap is not actionable if the handicap "*to some degree prevents the applicant [or employee] from performing the duties required by the employment sought or impairs the performance of the work involved.*"

Defendant relies on *Abraham* to argue that plaintiff admitted she was physically unable to perform the essential duties of her assigned employment and therefore cannot establish a *prima facie* case. In *Abraham*, the plaintiff, admitted that her physical limitations "impaired and prevented her from performing the duties required" of her employment position. *Abraham*, slip op. at 14. According to the court, the plaintiff could not establish a *prima facie* case under the plain language of T.C.A. § 8–50–103 because she admitted that, because of her handicap, she was physically unable to perform the essential duties of the assigned employment.

However, we find that the present case is distinguishable from *Abraham*. Although plaintiff conceded that she was restricted in her ability to perform heavy lifting and bending, plaintiff contended that she had been placed in a light duty position and that her performance in that position was satisfactory.

It is true that plaintiff Tuck could not perform the normal duties of a Registered

Nurse when she started employment again on February 5, 1990. However, it is also true that defendant Hospital made arrangements for plaintiff to be employed in its restricted duty program to reduce the strain Tuck would face. Tuck's supervisors agreed that she would not have to do heavy lifting, pushing, etc., provided she reciprocated by doing some of the other nurses' light duties such as dispensing medicines. Plaintiff was never told nor notified that her performance was unacceptable.

■ We believe that if a hospital offers a restricted duty program in order to allow a temporarily handicapped person to remain employed, it is a question of fact for the jury whether the employment for the duration of the restricted duty time period consists of the light duties assigned in the restricted duty program indicating the employee was "otherwise qualified" to do the work once the light duty restriction was lifted. In the present case, it is undisputed that plaintiff returned to her employment on February 5, 1990 with a two-month restricted duty limitation and that she was terminated in less than eight weeks on March 22, 1990.

We believe that the issue of what constituted the "duties required by the employment sought" was a question of fact for the jury to decide. Tuck's duties were set forth in a job description, but upon returning to work, she and her supervisors agreed to alter for at least two months, the physical exertions expected of her. It was the province of the jury to determine whether Tuck could perform the duties that constituted her employment at the time without the handicap affecting "to some degree" her ability to perform these duties.

The district court correctly instructed the jury that under the state law, T.C.A. § 8–50–103 and § 4–21–311, plaintiff had to establish that she could perform her job without accommodation and that defendant terminated her solely because of her handicap. Plaintiff offered evidence that she was in a light duty position, which the hospital voluntarily offered her, that she fully performed all duties assigned to her, and that no one ever complained to her about her performance. Defendant denied that plaintiff was performing

in a light duty position and contended that plaintiff's termination was due in part to unsatisfactory performance. It was the province of the jury to resolve these factual issues. *Pratt v. National Distillers & Chemical Corp.*, 853 F.2d 1329, 1337 (6th Cir.1988), *cert. denied*, 489 U.S. 1012, 109 S.Ct. 1121, 103 L.Ed.2d 184 (1989).

In the present case, we find that ample testimony and other evidence was presented at trial from which a reasonable trier of fact could conclude for either party. Hence, no "complete absence of proof" exists by which the district court could have granted defendant Hospital's motion for judgment as a matter of law. We therefore affirm the district court on this issue.

### III.

■ We must next decide whether the Rehabilitation Act of 1973, 29 U.S.C. § 794 requires exhaustion of administrative remedies.

Defendant Hospital contends that plaintiff Tuck was required to exhaust available statutory or regulatory administrative remedies before bringing suit under section 504. Defendant contends that the exhaustion requirement applicable to federal employees should apply to all employees.

We disagree for the following reasons. The two cases on which defendant relies in support of its position involve Postal Service employees suing the Postal Service. *See Hall v. United States Postal Serv.*, 857 F.2d 1073 (6th Cir.1988); *Smith v. United States Postal Serv.* 742 F.2d 257 (6th Cir.1984). This court in *Smith*, examined the legislative intent of the statute and found it "clear that handicapped employees have the right to sue *federal employers* under the Act 'subject of course to the provisions for exhaustion of administrative remedies and other rules for procedures set forth in Title VII.' " *Smith*, 742 F.2d at 261 (emphasis added).

In the context of private employers and private employees, however, there is no exhaustion requirement. When the Rehabilitation Act was first promulgated, there was no provision for a private right of action. However, in 1978, Congress amended the Act to

provide a private right of action. Handicapped federal employees were given the "remedies, procedures, and rights" of Title VII of the Civil Rights Act of 1964, *see* 29 U.S.C. § 794a(a)(1), and were required to exhaust administrative remedies just as other claimants under Title VII were. *Byers v. Rockford Mass Transit Dist.*, 635 F.Supp. 1387, 1389 (N.D.Ill.1986). Handicapped employees who work for recipients of federal financial assistance, on the other hand, were given the "remedies, procedures, and rights" of Title VI of the Civil Rights Act of 1964, *see* 29 U.S.C. § 794a(a)(2), and were not required to exhaust administrative remedies. *Byers*, 635 F.Supp. at 1389. As the court in *Byers* explained:

> Section 504 administrative regulations, like those of Title IX, were modeled after Title VI and are designed primarily to force compliance with the Rehabilitation Act through threatened cut-off of federal assistance. It is this correlation of administrative schemes that has lead the courts to hold that exhaustion is not a prerequisite to private enforcement of section 504.

*Id.* at 1390; *see also Consolidated Rail Corp. v. Darrone*, 465 U.S. 624, 631, 104 S.Ct. 1248, 1253, 79 L.Ed.2d 568 (1984); *Greater Los Angeles Council on Deafness, Inc. v. Community Television of So. Cal.*, 719 F.2d 1017, 1021 (9th Cir.1983), *cert. denied* 467 U.S. 1252, 104 S.Ct. 3535, 82 L.Ed.2d 840 (1984); *cf. Cannon v. University of Chicago*, 441 U.S. 677, 706 n. 41, 99 S.Ct. 1946, 1962 n. 41, 60 L.Ed.2d 560 (1979) (no requirement of exhaustion of administrative remedies prior to filing suit under Title IX).

Moreover, every court of appeals, which has considered the issue whether to apply the exhaustion requirement to non-federal employees under the statute, has decided *not* to apply the requirement. *Smith v. Barton*, 914 F.2d 1330, 1338 (9th Cir.1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 2825, 115 L.Ed.2d 995 (1991); *Miener v. State of Mo.*, 673 F.2d 969, 978 (8th Cir.), *cert. denied*, 459 U.S. 909, 103 S.Ct. 215, 74 L.Ed.2d 171 (1982); *Pushkin v. Regents of University of Colorado*, 658 F.2d 1372, 1380–82 (10th Cir. 1981). This judicial trend developed because the applicable remedies provide no individual relief, including no damage orders against an employer. Moreover, the regulations that enforce section 504 are the same procedures adopted to enforce Title IX of the Education Amendments of 1972. The Supreme Court in *Cannon v. University of Chicago*, 441 U.S. 677, 706–08 n. 41, 99 S.Ct. 1946, 1962–63 n. 41, 60 L.Ed.2d 560 (1979) held that plaintiffs need not exhaust Title IX administrative remedies before pursuing a private suit because the procedures do not provide adequate relief for private persons. We believe a similar rationale applies in the present case. For these reasons, we find that plaintiff Tuck had no duty to exhaust administrative remedies before filing suit.

## IV.

Finally, we must decide whether the district court erred as a matter of law that plaintiff Tuck was an "otherwise qualified handicapped employee" under the Rehabilitation Act of 1973.

■ Because defendant stipulated that plaintiff was a handicapped person within the meaning of 29 U.S.C. § 794, the issue becomes whether plaintiff was a "qualified handicapped person" which means "a handicapped person who, with reasonable accommodation, can perform the essential functions of the job in question." 45 C.F.R. § 84.3(k). Issues involving the essential elements of the job and reasonable accommodation are primarily factual issues. *Hall v. United States Postal Serv.*, 857 F.2d at 1074.

■ In *School Bd. of Nassau County v. Arline*, 480 U.S. 273, 288 n. 17, 107 S.Ct. 1123, 1131 n. 17, 94 L.Ed.2d 307 (1987), the Supreme Court has defined an "otherwise qualified" handicapped person in the workplace as "one who can perform 'the essential functions' of the job in question. When a handicapped person is not able to perform the essential functions of the job, the court must also consider whether any 'reasonable accommodation' by the employer would enable the handicapped person to perform those functions." The Court explained further that in determining whether the handicapped employee is "otherwise qualified" for the job, the court "will need to conduct an

individualized inquiry and make appropriate findings of fact." *Id.* at 287, 107 S.Ct. at 1130.

Defendant Hospital argues that plaintiff Tuck was not able to perform all of the essential duties of a registered nurse at the hospital since she should not do any heavy lifting, bending, pushing or pulling, relying on the written job description for a staff nurse, which requires all registered nurses to be able to lift between fifty and 100 pounds as an essential element of their job. However, in *Hall v. United States Postal Serv.*, 857 F.2d at 1079, this court held that a court's fact-specific inquiry "should be based upon more than statements in a job description and should reflect the actual functioning and circumstances of the particular enterprise involved." *Id.* at 1079.

In *Hall,* the plaintiff was not hired as a distribution clerk by the Postal Service because she could not lift the seventy pounds required by the Postal Service's job description. The district court found the job description controlling and granted summary judgment for the Postal Service. This Court reversed and remanded, concluding that Hall "raised a legitimate factual dispute as to whether the 70 pounds lifting requirement was indeed essential." *Id.* Hall had prior experience as a clerk with the Postal Service, and had neither done any heavy lifting herself nor had she observed others doing any heavy lifting. *Id.* This court in *Hall* also stated that what constitutes an "essential" element of the job is a legal conclusion for the court after it conducts its "individualized inquiry," and is not a conclusion for the employer to make. *Id.*

The applicable regulations outline, in pertinent part, an employer's duty to make reasonable accommodations as follows:

§ *84.12 Reasonable accommodation.*

(a) A recipient shall make reasonable accommodation to the known physical or mental limitations of an otherwise qualified handicapped applicant or employee unless the recipient can demonstrate that the accommodation would impose an undue hardship on the operation of its program.

(b) Reasonable accommodation may include: (1) making facilities used by employees readily accessible to and usable by handicapped persons, and (2) job restructuring, part-time or modified work schedules, acquisition or modification of equipment or devices, the provision of readers or interpreters, and other similar actions.

(c) In determining pursuant to paragraph (a) of this section whether an accommodation would impose an undue hardship on the operation of a recipient's program, factors to be considered include:

(1) The overall size of the recipient's program with respect to number of employees, number and type of facilities, and size of budget;

(2) The type of the recipient's operation, including the composition and structure of the recipient's workforce; and

(3) The nature and cost of the accommodation needed.

(d) A recipient may not deny any employment opportunity to a qualified handicapped employee or applicant if the basis of the denial is the need to make reasonable accommodation to the physical or mental limitations of the employee or applicant.

This court also stated in *Hall* that an accommodation is not reasonable if it requires eliminating an essential element of the job; and an employer is not required to eliminate an essential element of the job to accommodate a handicapped employee. *Id.* at 1078. Similarly, "[a]n accommodation is not reasonable, and therefore will not be required, if, for instance, it imposes an undue hardship upon the operation of the ... employer." *Id.* at 1080. However, not "*every* accommodation relating to an essential function of a position necessarily *eliminates* that function." *Id.* (emphasis added). Thus, a job description is not controlling.

The district court applied these principles and concluded that although plaintiff could not perform all the essential duties of her job, reasonable accommodation had not been made, stating:

[T]he Court must now determine whether Mrs. Tuck could perform the essential functions of a registered nurse at Donelson Hospital without any accommodation by the hospital. If she could not, the Court

must then determine whether she could perform the essential functions with reasonable accommodation by the hospital.

The Court finds that Mrs. Tuck could not perform all the essential duties of a registered nurse at Donelson Hospital, at least on the Progressive Care Unit, without reasonable accommodation by the hospital. Mrs. Tuck's biggest limitation was her inability to lift heavy objects, such as patients. Patients in the Progressive Care Unit require considerable attention, and often need to be lifted from their bed. In addition, the nurses in the Progressive Care Unit work longer, twelve-hour shifts, instead of the eight-hour shifts available in other wards of the hospital.

However, the Court finds that Mrs. Tuck was "otherwise qualified" for the position of a registered nurse at Donelson Hospital, and could have performed adequately the essential functions of the job with reasonable accommodations by the hospital. The Court is also of the opinion that the hospital did not make reasonable accommodations for Mrs. Tuck. While Mrs. Tuck was working on the Progressive Care Unit, and at the time she was terminated, the hospital was advertising for nurses to fill positions on several different wards (including MCCU, SICU, cardiac stepdown, medical/oncology, medical/pediatric surgical, orthopedics, and special care nursery). In addition, these registered nursing positions were for "full time, part time ... on all shifts, both 8 and 12 hour compensation. We also have some 4 and 6 hour shifts available." The hospital did not offer any of these open positions to Mrs. Tuck. Nor has the hospital shown that placing Mrs. Tuck in any of these other positions or making any other accommodations for her would have imposed an undue hardship on it.

For Donelson Hospital to be in violation of the statute, it must have also "excluded [Mrs. Tuck] from participation in, ... denied [her] the benefits of, or ... subjected [her] to discrimination under the program solely by reason of [her] handicap." Do-

herty, [Doherty v. Southern College of Optometry,] 862 F.2d 570, 573 (6 Cir.1988). For the reasons discussed below, the Court finds that Donelson Hospital did discriminate against Mrs. Tuck "solely by reasons of [her] handicap." *Id.*

When Mrs. Tuck had worked at the hospital before her back injury and leave of absence, she had received annual performance evaluations from her superiors ranging from "good to very good" to "outstanding." In addition, she had been named the hospital's Employee of the Month for September 1985. In the letter from Mr. Ed Steinback, the hospital's administrator, to Mrs. Tuck informing her of the award, Mr. Steinback stated that she had been chosen for the award "because you consistently represent the best qualities of a hospital employee. These qualities include reliability, positive attitude, good grooming, loyalty to your department and Donelson Hospital, and the good relationship you have with your co-workers." There were no reprimands or other negative reports in Mrs. Tuck's employee file either before or after her leave of absence.

When Mrs. Tuck returned to work after her leave of absence, Ruth Harkreader was the clinical coordinator on the Progressive Care Unit. Kathleen Graves replaced her as clinical coordinator on March 7, 1990. The clinical coordinator is in charge of hiring and firing the nurses on the unit, as well as scheduling and other duties. Before terminating Mrs. Tuck, Ms. Graves spoke with other nurses on the Progressive Care Ward about Mrs. Tuck's job performance, and with Mr. Stahlman, the Director of Human Resources. She did not speak with Mrs. Tuck, or check with her doctor about Mrs. Tuck's physical restrictions. Instead, she relied on the fact that the original note from Dr. Gaines placing Mrs. Tuck on light duty for two months had expired.[6] In other words, since Mrs. Tuck technically was no longer on light duty, at least in Ms. Graves' opinion, and Mrs. Tuck was not able to per-

---

6. As noted previously, Tuck was not allowed to continue in the light duty position for two

months after the date she returned to her job.

form all the duties of a non-handicapped registered nurse, she was terminated. She was fired because of her handicap.

We agree with this analysis. Reasonable accommodations may include procuring and paying an interpreter for deaf students, *Camenisch v. University of Texas*, 616 F.2d 127, 133–136 (5th Cir.1980), or providing an interpreter for deaf jurors, *Greater Los Angeles Council on Deafness, Inc. v. Zolin*, 812 F.2d 1103 (9th Cir.1987). In *Arneson v. Sullivan*, 946 F.2d 90, 92–93 (8th Cir.1991), the court held that reasonable accommodation could also include allowing an employee to carry a reduced work load. The court specifically held that for an employee with a neurological disorder causing distractibility, the employer would be required to provide the employee training on a new computer system, provide assistance to the employee by a reader and offer the employee more private work space to lessen the distractions. In addition this court in *Hall*, 857 F.2d at 1080, specifically held that it was defendant's burden to show that reasonable accommodation could not be made, and in a more recent decision this court again stated that the employer must "demonstrate that the challenged criteria are related and required by business necessity and that reasonable accommodation is not possible." *Taylor v. U.S. Postal Service*, 946 F.2d 1214, 1216 (6th Cir. 1991).

In the present case, we believe defendant has not met its burden. Defendant terminated plaintiff Tuck during the eight weeks employment in which she was employed in a restricted duty position and gave her no indication that her job performance was unsatisfactory prior to her termination. Shortly after her termination, plaintiff secured another nursing position requiring equal or greater physical exertion and has satisfactorily performed that job to date.

For these reasons, the district court is affirmed on this issue.

## V.

To conclude, we **AFFIRM** the decision of the Honorable Thomas A. Higgins, United States District Judge for the Middle District of Tennessee.

KENNEDY, Circuit Judge, concurring in part and dissenting in part.

I concur in the portion of Judge Keith's opinion that holds that plaintiff was not required to exhaust administrative remedies.

I dissent from the holding that defendant is liable under state law when plaintiff admitted that she was physically unable to perform the essential duties of her job in that she could not lift patients. As the majority notes, Section 8–50–103 of the Tennessee Human Rights Act makes it unlawful for an employer to discriminate against an individual based solely upon any handicap of the individual, "unless such handicap to some degree prevents the applicant from performing the duties required by the employment sought or impairs the performance of the work involved." A plaintiff bears the initial burden of establishing a prima facie case of discrimination. To carry this burden, plaintiff must show: (1) the existence of a handicap, and (2) that she can perform the duties of the job despite the handicap. Only when plaintiff presents a prima facie case, does the burden then shift to the employer to show that its job requirements are bona fide occupational requirements. *Abraham v. Cumberland–Swan, Inc.*, No. 90CV–1064, slip op. at 13–14, 1992 WL 207775 (Tenn.App. Aug. 28, 1992). *Abraham* involved a similar situation where the plaintiff admitted that her handicap prevented her from performing her job. The court ruled that the plaintiff's admission precluded her from establishing a prima facie case under the plain language of section 8–50–103. *Id.* at 14. The *Abraham* court also found even if the plaintiff had established a prima facie case, the Tennessee statute does not impose a duty upon the employer to accommodate by reassigning her to a vacant position. *Id.* at 14–15 (citing *Wimbley v. Bolger*, 642 F.Supp. 481 (W.D.Tenn.1986), *aff'd*, 831 F.2d 298 (6th Cir.1987)); *see also, Turner v. Eagle Distributing Co.*, No. 03A01–9209–CH–00338, 1993 WL 88365 (Tenn.App. March 29, 1993) (Tennessee law imposes no duty upon an employer to make accommodations for a handicapped employee

who admittedly cannot perform the duties of his job).

In the present case, Tuck acknowledged that all hospital nurses, whether charge nurses or staff nurses, must perform certain essential functions including walking from the nurses station to a patient's room; lifting from time to time; hanging IV's; lifting trays out of a patient's way; rolling a patient over the bed; changing dressings; picking up a patient who has fallen; and administering Cardio Pulmonary Respiration (CPR). Tuck also agreed that a nurse working on either the Orthopedic Unit or the Progressive Care Unit (PCU) must perform these duties. Tuck admitted that she could not perform some of these duties. In her deposition testimony of January 31, 1991, she stated that during her time on the PCU, she could not lift patients from their beds to perform certain treatments, and found it nearly impossible to assist patients in and out of bathtubs.

By virtue of her own admissions, Tuck failed to establish a prima facie case of discrimination under section 8–50–103; her testimony shows that her back condition "to some degree prevents [her] from performing the duties required by [her job]." Since Tuck cannot carry her burden, there is no actionable discrimination claim under Tennessee law.

The majority acknowledges that Tuck could not perform the regular duties of a nurse, but holds that when the hospital accommodated her by creating a light duty position specifically for her that would not require lifting or extensive walking, that became her job and she is, therefore, entitled to recover if she was discharged from that job because of her handicap. The majority cites no authority for its holding. I can see no basis for holding an employer liable for failing to continue to accommodate an employee whom it had no obligation to accommodate in

the first place. Certainly from a policy standpoint such a holding is harmful to the disabled. Tennessee employers are unlikely to try to accommodate handicapped employees if they will be held liable if the accommodation does not work out, but are not liable where they make no effort to accommodate.[1]

I would also reverse the District Court's judgment under the Rehabilitation Act and remand for further proceedings.

Section 504 of the Rehabilitation Act provides in pertinent part:

No otherwise qualified individual with handicaps ... shall, solely by reason of her or his handicap, be excluded from the participation in, be denied the benefits of or be subjected to discrimination under any program or activity receiving Federal financial assistance....

29 U.S.C.A. § 794 (West Supp.1992). A prima facie case under section 504 requires proof that the plaintiff is: (1) a handicapped individual; (2) that she is "otherwise qualified" for the position held; (3) that she was terminated from the position "solely by reason of [her] handicap"; and (4) that the position was part of a program or activity receiving federal financial assistance. See Pesterfield v. Tennessee Valley Auth., 941 F.2d 437, 441 (6th Cir.1991). In addition to stipulating that Tuck was a handicapped individual, the parties also stipulated that the hospital regularly received federal financial assistance. Thus, the only two disputed issues are (1) whether Tuck is an "otherwise qualified handicapped individual," and (2) whether she was terminated "solely by reason of her handicap."

Whether one is an "otherwise qualified handicapped individual" involves a two-level inquiry. First, the court asks whether the handicapped individual can perform the essential duties of the position, with or without accommodation, despite the existence of the

---

1. Although the majority speaks of a "restricted duty program" as if that were a job description, the only evidence was that the hospital attempted to accommodate nurses, as for example pregnant nurses, where their colleagues were willing to perform some of their duties on a voluntary basis. The hospital did not have a slate of positions within a restricted duty program. A list of such positions was available in the Human Resources Department; however, there is no evidence that plaintiff was assigned to one of these positions or that she was qualified for or requested one of these positions if any were available. Rather, a special accommodation was made for her.

handicap. *Jasany v. United States Postal Serv.*, 755 F.2d 1244, 1250 (6th Cir.1985) (quoting 29 C.F.R. § 1613.702(f)). On this issue, the District Court found that Tuck could not perform the essential duties of a registered nurse on the Progressive Care Unit ("PCU"), in the absence of reasonable accommodation by the hospital. The court found her biggest limitation to be her inability to lift heavy objects, especially patients, and that lifting heavy objects is an essential duty of a nurse assigned to the PCU.

The next level of the "otherwise qualified" inquiry asks whether the plaintiff could perform the essential functions of the job *with* reasonable accommodation. *Hall v. United States Postal Serv.*, 857 F.2d 1073, 1078 (6th Cir.1988).[2] The District Court concluded that Tuck "could have performed adequately the essential functions of the job with reasonable accommodations by the hospital," but that the hospital had failed to make reasonable accommodations. On this point, the court did not discuss the arrangement the hospital had made so that Tuck could work on the PCU. Nor did the court suggest what the hospital could have done to accommodate Tuck in her job on the PCU. Nor did it make a finding that Tuck was performing satisfactorily on the PCU. Instead, the court based its finding that the hospital did not accommodate Tuck on the fact that at the time she was terminated, the hospital was running regular advertisements for a variety of nursing positions for "full time, part time . . . on all shifts, both 8 and 12 hour compensation. [The hospital] also [had] 4 and 6 hour shifts available." The court concluded that the hospital did not offer any of these positions to Tuck, and had failed to show that placing her in an advertised position with shorter hours would have imposed an undue burden upon it.

I believe this finding was clear error for two reasons. First, as the court itself notes, there were no vacancies in any positions with shifts shorter than twelve hours.[3] Cathy Parrish, the Chief Nursing Administrator, testified that the hospital ran the same advertisement almost every week whether or not the hospital had any open positions for the purpose of having a constant pool of applicants. Moreover, Parrish did not believe Tuck was qualified for any of the advertised positions even if there were vacancies. Tuck did testify that she believed she could have filled advertised positions for 8, 6 and 4 hour shifts on the medical oncology unit, the newborn nursery, and possibly the medical/pediatric/surgical unit. This testimony does not rebut the hospital's evidence that there were no vacancies for these positions. Parrish also testified that because Tuck had informed her that she was interested only in full-time positions because she needed the benefits, any 4 or 6 hour shifts, if available, were also ruled out because they did not include benefits.

Second, even if there were openings in other units that Tuck was qualified for, the hospital had no duty under the Act to reassign her to another position. *See Wimbley*, 642 F.Supp. at 486; *see also, Carter v. Tisch*, 822 F.2d 465, 467 (4th Cir.1987) ("The case law is clear that, if a handicapped employee cannot do his job, he can be fired, and the employer is not required to assign him to alternative employment."); *Black v. Frank*, 730 F.Supp. 1087, 1091 (S.D.Ala.1990) (Rehabilitation Act does not require reassignment of handicapped employees, therefore, "an employee is properly fired if he cannot perform the essential functions of his given posi-

---

**2.** What constitutes an essential element of the job is a legal conclusion that is reached by the trial court after conducting a highly fact-specific inquiry. *Hall*, 857 F.2d at 1079. In *Hall*, there was a dispute over whether or not heavy lifting was an essential element of the job that the plaintiff was seeking. We stated that this determination should reflect the actual demands of the job and should not hinge solely upon an employer's official job description. Here, heavy lifting is undisputably a job requirement that plaintiff could not perform in the absence of accommodating measures.

**3.** After stating that the hospital did not offer Tuck an "open position," the court dropped the following footnote:

The court notes that Perry Stahlman, the hospital's Director of Human Resources, stated in his deposition that Mrs. Tuck was not offered any job with a shift shorter than twelve hours because "[t]here weren't any vacant. . . ."

tion"). I would hold that the District Court erred when it found that the hospital's failure to reassign Tuck violated the Act.

The Act does impose affirmative actions upon employers to make reasonable accommodations. The employer bears the burden of showing that it cannot reasonably accommodate a particular employee. *Hall,* 857 F.2d at 1080. Once this is shown, the plaintiff must come forward to rebut this evidence. *Jasany,* 755 F.2d at 1251 (citing *Prewitt v. United States Postal Serv.,* 662 F.2d 292, 308 (5th Cir.1981)). We have held that an accommodation is not reasonable if it imposes an undue burden upon the employer. *Hall,* 857 F.2d at 1080. We have also held that an employer is not required to eliminate an essential function of the job to accommodate a handicapped employee. *Id.* The employer bears the burden of showing that a requested accommodation would result in the elimination of an essential function. *Id.*

There was evidence that the hospital could accommodate plaintiff by providing the job on the PCU since it did so. It is difficult for the employer to argue that it could not accommodate her in this fashion if, as she testified, she was able to satisfactorily perform the restricted duties and other employees were willing to perform her duties. The employer presented evidence that plaintiff could not or would not perform the expected restricted duties and that the other nurses were unwilling to continue to do the lifting for her patients. If she could not, or if the other nurses were unwilling to assume part of her duties, then the hospital either needed to accommodate her in some other way or she was not "an otherwise qualified handicapped individual" who could be accommodated. If she would not perform the assigned duties and they constituted a reasonable accommodation, then, of course, she was not fired on account of her handicap. The District Court made no finding of which witnesses it believed. The other nurses testified that plaintiff failed to attend to their patients in exchange for their doing the required lifting of her patients. Her supervisor testified that when the unit was shorthanded, plaintiff spent her time on the phone complaining of the situation rather than performing her assigned tasks. Plaintiff testified she performed all the duties she was capable of satisfactorily performing. The District Court must make a finding on these disputed facts. If it finds plaintiff could not perform even with the accommodation provided, it must make some finding of what other accommodation the hospital should have made to accommodate plaintiff.

Accordingly, I would remand the action to the District Court for such findings.