65 F.3d 169
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Lori A. PUTNAM, Plaintiff-Appellee/Cross-Appellant
v.
GMIS, INC., Defendant-Appellant/Cross-Appellee.
 Nos. 93-2326, 93-2368.
 United States Court of Appeals, Sixth Circuit.
 Sept. 5, 1995.
 
 Before: KEITH, RYAN and BATCHELDER, Circuit Judges.
 KEITH, Circuit Judge.
 
 
 1
 Defendant-Appellant, GMIS, Inc., appeals from a jury verdict awarding Plaintiff-Appellee, Lori A. Putnam, $250,000, in this sex discrimination case and from the denial of a Motion for Judgment as a Matter of Law After Trial. Putnam, cross-appeals the denial of her Motion to Dismiss the appeal, as well as certain other issues as addressed herein. For the following reasons, we AFFIRM and REMAND.
 
 I. STATEMENT OF THE CASE
 
 2
 Plaintiff, Lori A. Putnam, filed a Complaint on November 5, 1991, in the Wayne County Circuit Court for the State of Michigan. The Complaint was timely removed based on diversity to the United States District Court for the Eastern District of Michigan, Southern Division.
 
 
 3
 After the discovery period, both Plaintiff and Defendant, GMIS, Inc., filed motions to dismiss and for summary judgment. On October 30, 1992, the district court denied Plaintiff's summary judgment motions and granted in part and denied in part Defendant's summary judgment motions. The district court dismissed Plaintiff's breach of contract, failure to pay commission and violation of the Employee right to Know Act claims, while allowing Plaintiff's sex discrimination claim to proceed to trial.
 
 
 4
 On March 24, 1993, the jury awarded Plaintiff a $250,000 verdict due to Defendant's sex discrimination under the Michigan Elliott-Larsen Civil Rights Act, MCLA 37.2101 et seq. On March 31, 1993, the district court entered its Judgment in favor of Plaintiff based on the jury verdict. On May 17, 1993, the district court denied Defendant's motion for judgment as a matter of law but granted Defendant's alternative motion for a new trial, finding the jury verdict contrary to the great weight of the evidence.
 
 
 5
 Defendant moved for rehearing of the order denying judgment and granting a new trial. Defendant argued that the district court should either enter judgment for Defendant or allow the case to proceed to appeal to avoid the unnecessary costs and delay involved in a complete retrial of the case.
 
 
 6
 Defendant's motion for rehearing and reconsideration was initially denied by the district court on June 29, 1993. On September 1, 1993, after the parties appeared for a pre-trial conference, the district court issued an Order reconsidering and vacating its May, 1993 Order granting motion for a new trial. On September 8, 1993, Plaintiff filed Objections to the September 1, 1993 Order granting Defendant's request for an immediate appeal.
 
 
 7
 On September 14, 1993, the district court disposed of the objections by entering its Amended Judgment in favor of Plaintiff and against Defendant in the amount of $250,000.
 
 
 8
 On October 12, 1993, Defendant filed this Notice of Appeal. On October 21, 1993, Plaintiff filed its Notice of Cross-Appeal.
 
 II. STATEMENT OF FACTS
 
 9
 Defendant GMIS, Inc., manufactures and sells computer software to companies that process health insurance claims. GMIS' software detects and eliminates improper and erroneous billings submitted to health insurers. Plaintiff Lori A. Putnam worked as the midwestern regional sales representative for GMIS from April, 1988, until September 4, 1991.
 
 
 10
 In January, 1988, a few months prior to Plaintiff's hire, James Walsh was named Sales manager for GMIS. At that time, there were only two sales representatives.
 
 
 11
 Putnam joined GMIS, along with two other sales representatives at a time when GMIS was expanding its sales and marketing effort. In January, 1988, Gary Barton was hired as the sales representative for the southeast region. In April, 1988, James Dever was hired as the sales representative for the western region. Also in April, 1988, Plaintiff was hired as the sales representative for the midwest region. Plaintiff was hired by James Walsh, National Sales manager, with approval by Thomas Owens. Of the four sales representatives, Plaintiff was the only female.
 
 
 12
 In April 1990, Walsh was transferred to a different position and Michael Kulp, hired as the National Sales Manager, took over supervisory responsibility for Putnam. During the first four months of his employ, Kulp testified that Putnam had problems building relationships with customers and making the right communications within the prospect company.
 
 
 13
 According to Kulp, Putnam was the only sales representative who failed to meet quota for two consecutive full sales years. On August 15, 1991, after Putnam lost a sale to a large insurance company to a competitor, Kulp concluded that Putnam's employment should be terminated. Owens approved Kulp's recommendation and on September 4, 1991, notified Putnam of her termination.
 
 
 14
 Putnam alleges she was treated differently than the male sales staff and was ultimately terminated due, in large part, to Kulp's attitude toward her as a woman. In support of this allegation Putnam points to several incidents which occurred during the course of her employ. Prior to Kulp's hire, Putnam received several favorable reviews. In 1988 Plaintiff's supervisor, Jim Walsh, indicated that he was pleased with her work. In 1989 the board of directors voted to award her stock options, ostensibly because of her fine sales performance. In 1990 Plaintiff was awarded additional stock options. Also in 1990, Plaintiff again received an excellent review.
 
 
 15
 In 1991, however, after Mike Kulp became her supervisor, Putnam alleges that he treated her in a derogatory manner compared to the male sales representatives, engaged in sexually offensive and degrading comments about women and excluded her from certain social events. Specifically, Plaintiff alleges that male sales staff received special coaching from Kulp to help improve their sales performance, while no such coaching was offered to Plaintiff. Further, male employees were given chances to improve performance after being warned of a deficiency. On at least one occasion a male employee was placed on probation for ninety days to improve his performance.
 
 
 16
 Plaintiff also asserts that she was ignored during sales meetings. On some occasions, Kulp would talk to others while Plaintiff was making a presentation in the sales meeting. Plaintiff alleges that no such conduct was exhibited while male employees made presentations to the staff.
 
 
 17
 Plaintiff argued to the jury that she was a victim of both disparate treatment and intentional sexual discrimination.
 
 III. DISCUSSION
 A. JURISDICTION
 
 18
 Plaintiff-Appellee-Cross-Appellant, Lori Putnam, first argues that this court lacks jurisdiction to hear this appeal because it was not timely filed. The district court first entered judgment against Defendant on March 31, 1993. On April 14, 1993, Defendant filed a motion for judgment as a matter of law after trial, or in the alternative, for a new trial. The district court initially ordered a new trial on May 17, 1993, but later upon reconsideration, reversed itself and entered its order vacating the order granting Defendant's motion for a new trial on September 1, 1993. On September 7, 1993, the Plaintiff filed objections to this Order. On September 14, 1993, the court reentered its original judgment as an amended judgment. Defendant filed its notice of appeal on October 12, 1993.
 
 
 19
 This issue was addressed by a motion's panel of this court which determined the time for filing an appeal was tolled by Plaintiff's post-judgment motion questioning the correctness of the judgment. In light of this tolling, the Defendant's appeal was timely filed within 30 days of the amended judgment.
 
 B. MOTION FOR JUDGMENT AS A MATTER OF LAW
 
 20
 The standard of review for denial of a motion for judgment as a matter of law is de novo, applying the same standards as the district court considering the motion. Roush v. KFC Nat'l Management Co., 10 F.3d 392, 395 (6th Cir.1993).
 
 
 21
 Judgment as a matter of law is appropriate when reasonable minds could not differ as to the conclusions to be drawn from the evidence. Morelock v. NCR Corp., 586 F.2d 1096, 1104-5 (6th Cir.1978). If the court determines that the evidence points so strongly in favor of the movant that reasonable minds could not reach a different conclusion, a judgment as a matter of law motion should be granted. Id.
 
 
 22
 All reasonable inferences must be drawn in favor of the non-movant "without weighing the credibility of witnesses or considering the weight of the evidence...." Gootee v. Kulp Indus., Inc., 712 F.2d 1057, 1062 (6th Cir.1983).
 
 
 23
 Defendant argues that Plaintiff failed to present either direct or circumstantial evidence to show that Defendant's proffered explanation for its actions was pretextual. In the instant case, the Plaintiff put forth evidence to show that rather than being a poor performer Putnam generated more revenue for Defendant during her tenure than most of the male sales representatives. Defendant argued to the jury that Putnam had the richest territory and therefore was expected to generate more revenue. Putnam countered that even when this factor was taken into consideration she moved up from number two in sales to number one in her final year of employment. Putnam also introduced evidence to show that she received the highest commissions.
 
 
 24
 Clearly, Plaintiff and Defendant each put on their best case and produced contradictory testimony and other evidence. In essence, the jury had to make a credibility determination, and ultimately found in favor of Plaintiff. It is the jury's province to decide factual issues. See Tuck v. HCA Health Services of Tennessee, Inc., 7 F.3d 465, 470 (6th Cir.1993). In the instant case, the jury had sufficient evidence to find in Putnam's favor. In light of the standard here, that all reasonable inferences must be drawn in Putnam's favor, it is clear that the district court acted properly in denying Defendant's motion for Judgment as a Matter of Law. See id. at 469.
 
 C. PREJUDICIAL TESTIMONY
 
 25
 Defendant next argues that the district court erred by allowing in irrelevant testimony of comments made by Kulp and his treatment of Plaintiff. Defendant asserts that since Kulp did not have the final decision to terminate Putnam, his comments and attitude toward Plaintiff are irrelevant. This simply is not so. Kulp's conduct goes directly toward the reasons for recommending termination, whether they were discriminatory or legitimate. Even though he did not have the final say, Kulp had substantial input and, therefore, his feelings, conduct and statements about the Plaintiff are relevant. It was not an abuse of discretion by the district court to allow this testimony.
 
 D. ADMISSIBILITY OF CERTAIN EVIDENCE
 
 26
 Defendant claims that Plaintiff's introduction of certain exhibits was reversible error. Defendant alleges that Plaintiff was allowed to introduce summary charts and exhibits which skewed the revenue calculations in an argumentative fashion.
 
 
 27
 The admission of summaries under F.R.Evid. 1006 is within the sound discretion of the trial court. Gomez v. Great Lakes Steel Div, Nat'l Steel Corp., 803 F.2d 250, 257 (6th Cir.1986). Defendant fails to demonstrate how the court abused its discretion. Even if the charts were somehow skewed, Defendant had an opportunity to cross-examine and bring any discrepancies to the jury's attention.
 
 E. DAMAGES
 
 28
 Plaintiff cross-appealed on the issue of damages, arguing that the court abused its discretion by precluding her from introducing evidence of the value of her lost stock options as an element of damages. The district court excluded the stock option claim after holding a scheduling conference on March 5, 1992, and inquiring whether the pleadings were satisfactory or any amendments would be necessary. Plaintiff's counsel informed the court he wanted to amend the complaint to allege a claim for denial of stock options. Apparently, after Plaintiff was terminated she attempted to exercise her stock options and sent in a check to secure the stock. Defendant cashed her check but then refunded the money and denied Plaintiff's right to exercise the options. This transaction took place after the initial complaint was filed.
 
 
 29
 After hearing from both sides at the scheduling conference, the court allowed Plaintiff thirty days to amend the complaint without motion. Plaintiff never amended the complaint.
 
 
 30
 Plaintiff now contends that she did not amend the complaint because she felt there was already a claim for lost fringe benefits which encompassed the stock options. This argument is a bit disingenuous given that Plaintiff sought to separately include the claim at the scheduling conference. Plaintiff further argues that no prejudice exists because Defendant was aware of the stock option dispute and freely discussed the stock option agreement during discovery. Defendant counters that the stock option agreement is a separate contract from the employment agreement and therefore requires a separate pleading to allow for a proper defense.
 
 
 31
 Plaintiff has not provided good cause for failing to amend the complaint. Therefore, it was not an abuse of discretion for the court to exclude this issue from the trial.
 
 F. BREACH OF EMPLOYMENT CONTRACT
 
 32
 Plaintiff argues further in her cross-appeal that the district court erred by granting summary judgment to Defendant on the breach of employment contract claim. A grant of summary judgment is reviewed de novo. Wiley v. United States, 20 F.3d 222, 224 (6th Cir.1994).
 
 
 33
 Plaintiff claims that Defendant breached her employment contract which required good cause for discharge. Under Michigan law, an employer who expressly or impliedly agrees to provide an employee with job security may be liable for breach of employment contract if it fires the employee without good cause. Rood v. General Dynamics Corp., 444 Mich 107 (1993). Plaintiff alleges that she engaged in extensive negotiations concerning job security during her interviews with Defendant. Further, Plaintiff related how she and Mr. Walsh, the sales manager at the time, talked about job security because she was trying to find out what kind of company it was.
 
 
 34
 Defendant counters that Putnam was an at-will employee hired for an indefinite term. Consistent with this argument, Plaintiff's Employment Agreement executed by Plaintiff December 22, 1989, expressly stated: "EMPLOYER or EMPLOYEE may terminate EMPLOYEE'S employment hereunder at any time." (R. 43 Ex. 6 p s1). This rendered Plaintiff's employment indefinite and terminable at will. See Scholz v. Montgomery Ward & Co., 437 Mich. 83, 93 (1991) (an at-will disclaimer supersedes prior express oral representations).
 
 
 35
 The court properly determined, as a matter of law, that the at-will provision in the Employment Agreement gave Defendant the right to terminate Plaintiff at any time. It was not error for the district court to grant summary judgment on this issue.
 
 G. RIGHT TO KNOW ACT
 
 36
 Plaintiff next argues in her cross-appeal that the district court erred by granting summary judgment in favor of Defendant on her Bullard-Plawecki Employee Right to Know Act claim. The Act entitles every employee to obtain a copy of his or her personnel file, MCL 423.501, et seq. The Act provides:
 
 
 37
 [T]he court shall award an employee prevailing in an action pursuant to this act the following damages: ... (b) For a willful and knowing violation of this act, $200.00 plus costs, reasonable attorneys fees, and actual damages.
 
 
 38
 Defendant points out that although it initially refused to turn over Plaintiff's personnel file, it was under the mistaken belief, pursuant to the advice of counsel, that because it was a Pennsylvania corporation it had no duty to turn over the file. As soon as Defendant retained Michigan counsel, the file was turned over to Plaintiff. In light of this information the district court found as a matter of law that Defendant did not "willfully and knowingly" refuse to turn over Defendant's personnel file. There was no error on the part of the district court for granting summary judgment in favor of Defendant on this issue.
 
 H. ATTORNEY FEES
 
 39
 Plaintiff argues that the district court abused its discretion by halving the requested attorney fees. An award of attorney fees to a prevailing Plaintiff is entirely a matter of discretion for the trial court. Wood v. DAIIE, 413 Mich. 573, 588 (1982). Plaintiff is only entitled to credit for hours of legal services "reasonably" supportive of the successful single claim of sex discrimination, not for any other claims. Hensley v. Eckerhart, 460 U.S. 424 (1983).
 
 
 40
 The Plaintiff has failed to show any abuse of discretion by the trial court in its award of attorney fees.
 
 I. APPELLATE ATTORNEY FEES
 
 41
 Plaintiff argues that she is entitled to attorney fees on appeal. Under Michigan law, a prevailing Plaintiff under the Elliott-Larsen Civil Rights Act may recover appellate attorney fees. MCLA 37.2101 et seq.; see also, McLemore v. Detroit Receiving Hospital, 196 MichApp 391 (1992). This issue is remanded to the district court for a determination of appropriate appellate attorney fees.
 
 IV. CONCLUSION
 
 42
 For the foregoing reasons the jury verdict and Amended Judgment entered by the Honorable Bernard A. Friedman, District Judge for the Eastern District of Michigan is AFFIRMED and the matter is REMANDED for further proceedings consistent with this opinion.