JOURNAL ENTRY AND OPINION
Plaintiff-appellant Robert Darovich appeals the trial court's decision granting summary judgment in favor of defendant-appellee General Motors Corporation (GM) and defendants-appellees International Union, United Automobile, Aerospace Agricultural Implement Workers of America (UAW) and UAW Local Union 1005.
The appellant asserts the following three assignments of error:
 THE TRIAL COURT ERRED WHEN IT HELD THAT DEFENDANT'S DUTY TO PROVIDE PLAINTIFF WITH THE OPTION TO ELECT EMPLOYMENT OUTSIDE OF THE CPC-PARMA FACILITY WAS PREEMPTED BY FEDERAL LAW BECAUSE IT WAS FOUNDED ON THE COLLECTIVE BARGAINING AGREEMENT.
 THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT ON BEHALF OF DEFENDANT GENERAL MOTORS CORPORATION WHEN IT FOUND THAT PLAINTIFF-APPELLANT FAILED TO DEMONSTRATE OBJECTIVELY REASONABLE ACCOMMODATIONS WHICH DEFENDANT GENERAL MOTORS CORPORATION COULD PROVIDE PRIOR TO TERMINATING PLAINTIFF-APPELLANT'S EMPLOYMENT.
 THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT ON BEHALF OF DEFENDANT INTERNATIONAL UNION, UNITED AUTOMOBILE, AEROSPACE AGRICULTURAL IMPLEMENT WORKERS OF AMERICA-UAW, AND DEFENDANT UAW LOCAL 1005 WHEN IT CONCLUDED THAT PLAINTIFF-APPELLANT FAILED TO EXHAUST HIS ADMINISTRATIVE REMEDIES, THEREBY BARING HIS CLAIMS AGAINST THESE DEFENDANTS.
The appellant argues that the trial court erred in its legal conclusions when it granted the motions for summary judgment of the appellees.
This court reviews the lower court's grant of summary judgmentde novo. Brown v. Scioto Bd. of Commrs. (1993), 87 Ohio App.3d 704. An appellate court applies the same test as the trial court. In Zaslov v. The May Dept. Stores Co. (Oct. 1, 1998), Cuyahoga App. No. 74030, unreported. Summary judgment is appropriately rendered when no genuine issue as to any material fact remains to be litigated; the moving party is entitled to judgment as a matter of law; it appears from the evidence that reasonable minds can come but to one conclusion; and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party. Turner v. Turner (1993), 67 Ohio St.3d 337, citing toTemple v. Wean United, Inc. (1977), 50 Ohio St.2d 317, andHarless v. Willis Day Warehousing Co. (1978), 54 Ohio St.2d 64. A court is permitted to grant a motion for summary judgment where all of the tests provided in Civ.R. 56 are met. See Celotex Corp.v. Catrett (1986), 477 U.S. 317, 323.
After a thorough review of the record below, this court affirms the trial court's decision. This court applauds the appellant's desire to continue working as a productive member of society, however, the trial court's opinion is a paradigm of clarity and precision and we therefore adopt same in toto. See appendix attached.
The appellant's assignments of error are overruled.
Judgment affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Exceptions.
TERRENCE 0'DONNELL, P.J., and MICHAEL J. CORRIGAN, J., CONCUR.
 ________________________ JAMES D. SWEENEY JUDGE
 APPENDIX
BURT W. GRIFFIN, J.:
This is an action by plaintiff Robert G. Darovich (hereinafter "Plaintiff") under Ohio Revised Code § 4112.99 against his employer, General Motors Corporation (hereinafter "GM"), his local union, UAW Local 1005 (hereinafter "Local 1005"), and his international union, International Union, United Automobile, Aerospace Agricultural Implement Workers of America-UAW (hereinafter "the International") (collectively referred to as "Defendants"). The matter is before this Court on motions for summary judgment by both the employer and by plaintiff's labor unions.
In his complaint, Plaintiff has alleged violations of the Ohio Statute, O.R.C. § 4112.99, barring employment discrimination against individuals with handicaps. Plaintiff alleges that GM, Local 1005 and the International intentionally "made no attempts whatsoever to discuss, identify, or locate work for plaintiff which would reasonably accommodate his physical disability and permit him to return to the active workforce." Plaintiff seeks back pay and other employment benefits from May 1, 1992, other compensatory damages, punitive damages, and attorney's fees.
The defendants raise a jurisdictional issue and argue that this Court's jurisdiction is preempted by § 301 of the Labor Management Relations Act (hereinafter "LMRA") because this Court can not grant a judgment for plaintiff without interpreting the collective bargaining agreement covering plaintiff, a function which § 301 reserves exclusively to the federal courts. In addition, Local 1005 and the International argue that plaintiff's claims are barred by his failure to exhaust internal union appeals.
The procedural history of this case is as follows: the case was originally filed in the United States District Court on July 1, 1994 when plaintiff filed suit against the defendants alleging violations of the Americans With Disabilities Act,42 U.S.C. Section 12101 et seq. (hereinafter "ADA"), and O.R.C.§ 4112.99. Both claims were based on the alleged failure by the defendants to reasonably accommodate plaintiff's disabilities resulting in his inability to continue employment at GM. The U.S. District Court, in an opinion by the Honorable George W. White, granted summary judgment in the defendants' favor on the ADA claim because the challenged conduct took place before the effective date of the ADA. The district court declined jurisdiction over the pendent state law claim and dismissed it.
On October 29, 1996, plaintiff filed the within action in this court. On December 11, 1996 defendants removed the case to federal court on the basis that plaintiff's claims were preempted by the collective bargaining agreement and required interpretation of the collective bargaining agreement. The United States District Court, in an opinion by the Honorable Judge Lesley Brooks Wells, remanded the case to this court and stated:
 . . . If the complaint on its face does not raise a federal question, the defendant cannot inject a federal question into the case and transform it into one arising under federal law. Caterpillar v. Williams, 482 U.S. 386, 398-99 (1987).
 Here, the complaint does not on its face invoke any federal rights under the Labor-Management Relations Act. The complaint on its face alleges handicap discrimination in violation of Ohio law, not (as defendants assert) a breach of the Union's duty of fair representation, or a breach of the collective bargaining agreement. Nor will the determination of defendants' liability involve any interpretation of the collective bargaining agreement. See e.g. Smolarek v. Chrysler Corp., 879 F.2d 1326 (6th Cir. 1989). "The fact that a defendant might ultimately prove that a plaintiff's claims are preempted under the NLRA does not establish that they are removable to federal court." Caterpillar, 482 U.S. at 398.
Section 301 of the LMRA governs claims founded directly on rights created by collective bargaining agreements and affords preemptive jurisdiction to the Federal Courts for any right claimed by a plaintiff that is created by a collective bargaining agreement or requires interpretation of a collective bargaining agreement. Terwilliger v. Greyhound Lines, Inc., 882 F.2d 1033,1038 (6th Cir. 1989), Caterpillar, Inc. v. Williams,482 U.S. 386, 394 (1987); DeCoe v. General Motors Corp., 32 F.3d 212, 216(6th Cir. 1994); Ulrich v. Goodyear Tire Rubber Co.,884 F.2d 936, 938 (6th Cir. 1989).
Thus, to the extent that plaintiff is claiming he was discriminated against under the collective bargaining agreement or is seeking relief based on any right found in the collective bargaining, his claim is preempted by § 301 and must be brought in a federal court. Accordingly, only the issues relating to the application of the Ohio ADA and the unions' duty of fair representation will be addressed. Rights to unidentified jobs in plants other than CPC-Parma or arising out of the Jobs Bank program would be founded on the collective bargaining agreement.
 I. Undisputed Facts
In 1954, plaintiff was a disabled United States army veteran having sustained permanent injuries during combat service in Korea. Some of these injuries included total hearing loss in his right ear and partial hearing loss in his left ear, fainting spells and anxiety attacks upon exposure to loud noises or excessive commotion, and degenerative joint disease.
In 1954, plaintiff began working with GM at the Euclid Service Parts Operations warehouse (hereinafter "SPO-Cleveland"). Plaintiff was a member of the UAW and his employment with GM was governed exclusively by the 1990 GM/UAW collective bargaining agreement (hereinafter "National Agreement"). Despite his medical disabilities, plaintiff was able to successfully perform his duties as stockhandler/packer without accommodation at the SPO-Cleveland. Plaintiff worked at the SPO-Cleveland until December, 1991 when it was closed in connection with a company wide consolidation of warehouses.
Prior to the closing of the SPO-Cleveland, bargaining unit employees were advised of their options. Plaintiff, as an employee with over 35 years of employment with GM, had four options available to him under the collective bargaining agreement: he could choose to retire; he could choose to be laid-off; he could transfer to another GMSPO warehouse in Livonia, Michigan or Cincinnati, Ohio (where plaintiff would have been able to continue performing the same job as the SPO-Cleveland)[1] or he could choose to enter a "Jobs Bank" at the GM manufacturing plant in Parma, Ohio (hereinafter "CPC-Parma").
The Jobs Bank program is designed to offer job security by protecting employees from layoff under certain conditions. Through the Jobs Bank, employees are placed in temporary job assignments at their regular rate of pay until permanent jobs in the regular bargaining unit become available. The temporary assignments may be traditional bargaining unit work or non-traditional tasks outside of the bargaining unit. Pursuant to the Jobs Banks provisions of the National Agreement, once placed in a Jobs Bank assignment the employee must be reassigned to a permanent position in the bargaining unit in accordance with his seniority when a permanent position in the bargaining unit becomes available.[2]
Plaintiff chose the Jobs Bank and was transferred to the CPC-Parma on December 2, 1991.[3] As an employee of the CPC-Parma, plaintiff's employment was subject to the local collective bargaining agreement between the CPC-Parma and Local 1005 (hereinafter "Local Agreement") as well as the National Agreement.
After plaintiff transferred to CPC-Parma he went to his doctor to obtain medical restrictions concerning his employment at the plant. His doctor, Conrad Lindes, wrote that "Mr. Darovich has medical problems which prevent him from working around loud noises or operating machinery." While in the Jobs Bank at CPC-Parma, plaintiff performed various temporary tasks within his medical restrictions, including temporary clerical work in the benefits department and temporary security work (watching cars in the parking lot from a "crow's nest").
Sometime in late April or early May of 1992, a permanent position in the regular bargaining unit became available on the manufacturing floor at CPC-Parma. Ed Ezaki, the Jobs Bank Coordinator at CPC-Parma (hereinafter "Ezaki"), informed plaintiff that he was required to take the position pursuant to the National Agreement. Plaintiff was hesitant about working on the factory floor and requested to remain in his temporary Jobs Bank program position. Ezaki informed plaintiff that this was not possible because the job he was currently in was not part of the bargaining unit.
Plaintiff was referred by Ezaki to Wendell Wallace, the union committeeman (hereinafter "Wallace"), to discuss his options. Wallace refused to write a grievance because he felt that the company's actions did not violate the collective bargaining agreement. Pursuant to Articles 32 and 33 of the Constititution of the UAW, plaintiff had the right to appeal this refusal through the unions's internal appeals procedure within 60 days. Article 33, Section 5, of the UAW Constitiution requires that UAW members exhaust their internal union appeals before filing a lawsuit against the union. Plaintiff did not file an internal union appeal.
Plaintiff next spoke with Robert Wickline, International Representative for UAW (hereinafter "Wickline"), who told plaintiff that he was required to enter the active workforce pursuant to the Local and National agreements. On May 4, 1992, plaintiff was referred to Wally Kijek, Chairman of the Shop Committee at CPC-Parma (hereinafter "Kijek"), who requested that plaintiff meet with him to discuss plaintiff's restrictions. Plaintiff refused to meet with Kejik. Instead, on May 5, 1992, plaintiff sought more specific medical restrictions from Dr. Lindes, who wrote:
To whom it may concern,
 Mr. Darovich suffers from (1) total hearing loss in the right ear; (2) partial hearing loss in the left ear; (3) post-traumatic stress syndrome which produces uncontrollable anxiety and fainting spells from exposure to loud noises, and, (4) degenerative joint disease and degenerative disc disease of the lumbar spine. Because of these medical conditions, he may not
 — wear any device that interferes with hearing — be exposed to noises louder than 40 decibels — climb ladders, or work around machinery into which he could fall if he faints — lift more than twenty pounds.
 The medical problems I have listed are permanent. The restrictions are, therefore, also permanent.
Since plaintiff was physically incapable of working directly on the plant floor because of his medical restrictions[4], GM and UAW representatives told him that they would try to find him a job that he could do within his restrictions. However, on the basis of plaintiff's noise and hearing restrictions and a Plant Sound Level-Engineering Report ("Sound Report") from the 1991 Sound Survey Update, GM determined that there was no bargaining unit position available that would be satisfactory to plaintiff's condition. The Sound Report set forth the maximum, minimum, peak and average sound level for each activity in the bargaining unit at CPC-Parma. This Sound Report established that, for each bargaining unit job activity at CPC-Parma, even the minimum noise levels exceeded the plaintiff's 40 decibel limit.[5]
Since plaintiff could not take the job offered to him on the plant floor, he was given two alternatives by GM — either retire or go on disability leave. Plaintiff chose disability leave. He also wrote the following letter to GM personnel manager Stephen Yokich on May 12, 1992 (in pertinent part):
I was coerced into signing disability retirement papers . . .
 I have no desire to quit my job with GM, nor do I wish to retire or go on sick leave . . . I am told of their (sic) is no job at CPC that I can perform. This fact was well known prior to the closing of the Cleveland GMSPO warehouse. I was already medically unable to perform plant work when I was hired in 1953 by GM. (SEE ATTACHED DOCUMENTATION.) This is way (sic) I, as a disabled vet worked in the warehouse and not in a plant. I was told I must retire or go on disability. I have been informed I have no rights and can not write a grievance and if I don't accept one of their two options they will consider me to have quit, which I have not . . ."
Plaintiff's letter was assigned to John Flaherty, Director of Labor Relations at GM ("Flaherty") for a response. Flaherty requested an investigation into plaintiff's concerns and forwarded plaintiff's letter to Gary Pheley, Director of Labor Relations at the Parma plant, ("Pheley") for further action. Pheley admitted in his deposition testimony that he had little knowledge and no involvement with regard to plaintiff's concerns but rather that he had assigned a staff member to look into the matter.[6] Thereafter, Flaherty responded to plaintiff on June 9, 1992 and stated, in pertinent part, the following:
 There is no dispute concerning your medical condition. The plant medical director and your personal physician are in agreement that you are medically unsuited for factory floor assignments.
 However, the JOBS Program, as outlined in the GM-UAW National Agreement, does not contain language which gives superior claims for "bank" status for employees in your circumstance.
 The CPC-Parma Local Union and Management are not empowered to circumvent the National Agreement on your behalf. At this time, your seniority entitles you to a position in the active work force. As such, the alternatives explained to you by your Local Union and Management are appropriate.
Plaintiff's letter was also referred to Willie Williams (hereinafter "Williams"), a representative of the UAW. Williams responded to plaintiff in a letter almost verbatim to the letter quoted above from Flaherty. Both Flaherty and Williams admitted in deposition that no efforts were made to find plaintiff a job that he could physically perform.[7]
Plaintiff continued his efforts to be placed on the active roster at GM and requested that he remain in the Jobs Bank program where he had been able to perform the work assignments given to him. Flaherty again responded to plaintiff by a letter dated June 24, 1992 in which he stated in pertinent part:
 . . .Please understand that effective with the transfer of the GMSPO JOBS Bank to the CPC-Parma, all employees in such JOBS Bank became employees of the CPC-Parma facility. Apparently, you have misunderstood or been misinformed that the GMSPO-Cleveland JOBS Bank continues to exist in some form at CPC-Parma. Such is simply not the case.
 GMSPO-Cleveland has ceased to exist as an entity, as has its JOBS Bank. Consequently, when the Bank was transferred to the CPC-Parma plant by agreement of the Corporation and the International Union, the employees in the Bank, yourself included, became Bank employees of CPC-Parma. The GM-UAW National Agreement allows for no other result. As a consequence, regardless of what you feel you may have been told or understand, your status is that of a seniority employee at CPC-Parma, with only those rights accorded to CPC-Parma employees under the National Agreement. GMSPO-Cleveland no longer exists; consequently, there are no rights flowing from such a facility.
 Currently your seniority rights at CPC-Parma call for you to be recalled to the active work force at CPC-Parma. Failing to be suitable for such an assignment you have only the recourse of either disability leave of absence or retirement.
On February 22, 1993 plaintiff submitted a claim for extended disability benefits and began receiving benefits from the Social Security Administration Retirement, Survivors and Disability Insurance retroactively from October, 1992. On February 24, 1994, plaintiff submitted an Application for Total and Permanent Disability Benefits which was approved on December 27, 1994.
In 1995, UAW and GM implemented a Job Placement Process for employees with disabilities. Job Placement is a process that enables employees to be retained at work or returned from work from a Sick or Worker's Compensation Leave of Absence and to be placed on jobs in line with their physical restrictions, if any, and applicable provisions of the Local and National Agreements. On January 10, 1995 and July 1995, plaintiff received invitations to return to work pursuant to the Job Placement Process. Plaintiff did not respond to either of these invitations.
In March 1998, GM, Local 1005 and the International filed motions for summary judgment relating to the all of the issues raised by plaintiff
 II. Opinion
Summary judgment is proper if: (1) the moving party is entitled to judgment as a matter of law; (2) there is no genuine issue of material fact; and (3) construing the evidence and the inferences to be drawn therefrom in favor of the non-moving party, reasonable minds can come to but one conclusion, and that conclusion is adverse to the non-moving party. Civ.R. 56 (C);Turner v. Turner (1993), 67 Ohio St.3d 337, 341. When a motion for summary judgment is made and supported as provided in Civ.R. 56, a plaintiff may not rest upon the mere allegation of his complaint, but his response, by affidavit or otherwise, must set forth facts showing that there is a genuine issue for trial.Morris v. Ohio Casualty Ins. Co. (1988), 35 Ohio St.3d 45, 47.
 A. Discrimination on the Basis of Handicap
Looking solely to plaintiff's claims under the Ohio ADA, this court must determine whether plaintiff has established that defendants have discriminated against him on the basis of his handicap in violation of O.R.C. § 4112.02. O.R.C. § 4112.02
provides in pertinent part:
 It shall be an unlawful discriminatory practice: (A) For any employer[8] because of the . . . handicap . . . of any person, to discharge without just cause, to refuse to hire, or otherwise to discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment.
To establish a prima facie case of handicap discrimination under O.R.C. § 4112.02, a plaintiff must prove that:
 (1) he is handicapped, (2) adverse action was taken by the employer, at least in part, because he was handicapped, and (3) even though he is handicapped, he can safely and substantially perform the essential functions of the job in question with reasonable accommodation. Csejpes v. Cleveland Catholic Diocese (1996), 109 Ohio App.3d 533, citing Hazlett v. Martin Chevrolet, Inc. (1986), 25 Ohio St.3d 279.[9]
In the present case, it is undisputed that plaintiff is handicapped and that "adverse action" was taken by GM because of plaintiff's handicap when plaintiff was given two options in May 1992 — that of disability leave or retirement. However, it is also undisputed that in 1991 plaintiff voluntarily chose to be transferred to the Jobs Bank program at CPC-Parma rather than transfer to another GMSPO warehouse in Livonia or Cincinnati[10], that he knew that he would eventually have to be assigned to a regular bargaining unit position at CPC-Parma, and that he could not perform the bargaining unit job that was eventually assigned to him.
Plaintiff argues that he has established a prima facie case of discrimination because GM failed to satisfy its statutory obligation to reasonably accommodate him by not making any efforts to investigate or explore possible accommodations for him.
A disabled employee who claims that he or she is otherwise qualified with a reasonable accommodation "bears the initial burden of proposing an accommodation and showing that the accommodation is objectively reasonable." Cassidy v. DetroitEdison Co., 1998 U.S. App. LEXIS 4407 at 11-12 (6th Cir. 1998),citing Monette v. Electronic Data Sys. Corp., 90 F.3d 1173, 1183(6th Cir. 1996). Reasonable accommodations include, but are not limited to, job restructuring, acquisition or modification of equipment or devices, realignment of duties, revision of job descriptions or modified, part-time work schedules, transfer, reassignment or hire into vacant positions. Wooten v. City ofColumbus (1993), 91 Ohio App.3d 326, 333.
Once an employee has proposed an objectively reasonable accommodation, an employer is required to explore methods and alternatives to reasonably accommodate the disabled employee prior to taking adverse action against the employee. Tuck v. HCAHealth Services of Tennessee, 7 F.3d 465 (6th Cir. 1993). Indeed, the employee's initial burden is shifted to the employer to show that it cannot reasonably accommodate the disabled employee because of undue hardship.[11] Id., Hall v. United StatesPostal Serv., 857 F.2d 1073, 1080 (6th Cir. 1988). An employer is not required to create a job or make work for a handicapped employee. Blankenship v. Martin Marietta Energy Systems,83 F.3d 153, 155 (6th Cir. 1996); Wooten, supra at 335; Howell v.Michelin Tire Corp., 860 F. Supp. 1488, 1492 (MD.Ala. 1994).
Here, plaintiff had the duty to propose an objectively reasonable accommodation — specifically — propose a specific position, demonstrate that it was vacant, and prove that he could safely and substantially perform the job. Cassidy, supra at 16.
Plaintiff "argues that he met this initial burden because he suggested other jobs possibilities at CPC-Parma such as "sweeper" and "loader." However, it is undisputed that there are no positions available at CPC-Parma that plaintiff could perform within his medical restrictions, with or without reasonable accommodation, since noise levels in all areas of the CPC-Parma plant, including office areas, exceeded 40 decibels. Plaintiff's suggestion that GM could have reasonably accommodated him by letting him remain in a temporary Jobs Bank position at CPC-Parma[12] or transferring him to another GM facility[13]
requires interpretation of the collective bargaining agreement and cannot be decided by this Court.
Accordingly, plaintiff has not established a prima facie case of discrimination under O.R.C. § 4112.02 and is unable to demonstrate any violation of the Ohio ADA.
 B. Duty of Fair Representation
Plaintiff argues that both of the unions breached their duty of fair representation when they failed to process a grievance on his behalf to protest GM's decision to terminate plaintiff's assignment outside of the bargaining unit. Plaintiff also alleges that both of the unions violated their duty to investigate the availability of jobs at other GM plants. However, union members, specifically UAW members, must exhaust their internal union remedies provided in their Constitution before resorting to the courts. Reinhardt v. UAW, 636 F. Supp. 864 (E.D. Mich 1986).[14]
The internal appeal procedure offers complete relief to union members who resort to its procedures.[15] Any appeal must be filed within 60 days of learning of the disposition of the grievance. Here, plaintiff never commenced or exhausted his internal union remedies.[16] Accordingly, plaintiff's claims against the unions are barred by his failure to exhaust internal union appeals.[17]
 IV. Conclusion
For the above mentioned reasons, the motions for summary judgment of defendants GM, Local 1005 and the International are hereby granted on plaintiff Robert G. Darovich's claims under the Ohio ADA and the breach of the unions' duty of fair representation.
Plaintiff may have rights afforded to him under the local and national agreements. However, any right that plaintiff may have to a job at another GM plant or any right to continue in the Jobs Bank program depends on an interpretation of the collective bargaining agreement and are preempted under § 301. Thus, any relief based on a right in the Jobs Bank or outside of CPC-Parma must be filed in a federal court.[18]
IT IS SO ORDERED.
 __________________________ BURT W. GRIFFIN, JUDGE
[1] Because plaintiff had so much seniority, he would have been guaranteed to be selected for transfer to either Cincinnati or Livonia based on his own choice. Darovich depo. at pp. 31.
[2] National Agreement page 220, paragraph (e) specifically states."In the event there is an opening due to a volume increase, the oldest seniority employee in the Bank will be placed in the opening."
[3] Darovich depo. at pp. 118.
[4] Indeed, plaintiff admits as such in his brief in opposition at page 4.
[5] Even in the union rep office and the janitor office, which were removed from the factory floor, the minimum and maximum decibel levels were 65 and 85 decibels; in addition any work outside, i.e. "Rack Repair Outside" had a minimum and maximum decibel levels of 75 and 99 decibels.
[6] Pheley depo. at pages 14, 16.
[7] Flaherty depo. at page 43; Williams depo. at page 29.
[8] It is also illegal under O.R.C. § 4112.02(c) for a labor organization to discriminate on the basis of handicap.
[9] The essential elements of a claim under the ADA and the Ohio handicap statute are the same and Ohio courts generally hold that evidence sufficient to support a finding of discrimination under the ADA is necessary before a violation of O.R.C. § 4112.02
is found. Greater Cleveland Regional Transit Auth. v. Ohio civil RightsComm'n (1989), 58 Ohio App.3d 20, 24; Hoffman v. Fidelty BrokerageServices, Inc., 959 F. Supp. 452, 457 n. 1 (S.D. Ohio 1997).
[10] Where plaintiff would have been able to continue performing the same job that he had performed at the SPO-Cleveland.
[11] Undue hardship has been defined by the ADA as "an action requiring significant difficulty or expense, when considered in light of:"
(I) the nature and cost of the accommodation needed;
 (ii) the overall financial resources of the facility or facilities involved in the provision of the reasonable accommodation; the number of persons employed at such facility; the effect on expenses and resources, or the impact otherwise of such accommodation upon the operation of the facility;
 (iii) the overall financial resources of the covered entity; the overall size of the business of a covered entity with respect to the number of its employees; the number, type, and location of its facilities; and
 (iv) the type of operation or operations of the covered entity, including composition, structure, and functions of the workforce of such entity; the geographic separateness, administrative, or fiscal relationship of the facility or facilities in question to the covered entity.
[12] The Jobs Bank program at CPC-Parma derives entirely from the National Agreement (See App. K). In order for this court to determine whether a new job could be created or if a temporary job could be made permanent, this court would have to interpret the National Agreement. For these reasons, any claim by plaintiff that he should have been accommodated by allowing him to remain in the Jobs Bank program is preempted by § 301.
[13] An employee's contention that the collective bargaining agreement allows for transfer without alteration of seniority rights, even if ultimately held to be correct, would perforce require interpretation of the agreement and i s preempted by § 301. Davis v. Johnson controls, Inc., 21 F.3d 866 (8th Cir.1994).
[14] Shamblin v. GM and UAW Local 112, 743 F.2d 436, 439 (6thCir. 1984); Rutushin v. GM, 575 F. Supp. 986, 990 (N.D. Ohio1983), aff'd 755 F.2d 933 (6th cir. 1985).
[15] See UAW's motion for summary judgment page 37.
[16] Furthermore, inasmuch as Wallace decided not to file a grievance on May 1, 1992, plaintiff was required to file his appeal by July 2, 1992 in order to be timely.
[17] Moreover, as previously noted in this opinion, whether plaintiff had a right under the National Agreement to those jobs at other GM plants depends on interpretation of the agreement and is barred by § 301 from presentation in a state court.
[18] Indeed, Judge Wells, in her remand to this Court, explicitly provided for this possibility when she stated in her opinion: "The fact that a defendant might ultimately prove that aplaintiff's claims are preempted under the NLRA does not establish that they are removable to federal court." (Emphasis added) Judge Wells cited to Caterpillar, cited supra, in which the United states Supreme Court stated that where a complaint which alleges only state law claims on its face and does not seek to enforce the collective bargaining agreement on its face is ultimately proved to be preempted under the NLRA, any of the preemption issues "must be addressed in the first instance by the state court in which the respondents filed their claims." Id. at398, footnote 13.